THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS M. ROOP, Defendant-Appellant.

Second District (2nd Division)   No. 75-17

Opinion filed June 28, 1976.

Ralph Ruebner and Peter B. Nolte, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant was indicted for the crimes of attempt murder, attempt robbery and conspiracy to commit robbery. After a jury trial, he was convicted of all three crimes and sentenced to serve concurrent penitentiary terms of 4 to 12 years for attempt murder, 2 to 6 years for attempt robbery, and 1 to 3 years for conspiracy to commit robbery.

The evidence presented during the trial established the following facts. After several preliminary meetings with Thomas Joupperi, two undercover agents of the Illinois Bureau of Investigation, Robert

Magnuson and William Doster, arranged to meet with Joupperi at his apartment for the purpose of reaching a final agreement on a proposed illicit drug transaction. The agents intended to arrest Joupperi upon the consummation of this sale.

On June 28, 1973, at approximately 7:30 p.m., the agents parked their car by Joupperi's Aurora apartment and summoned Joupperi to their car where they displayed $4000 in cash which was ostensibly to be used to purchase the drugs. Joupperi asked the agents to come into his apartment to discuss the details of the transaction. After the three men entered the apartment, Joupperi locked the front door, explaining that he did not want his landlord to intrude during the discussion.

As the men went into the living room, agent Magnuson walked to a couch located near a hallway leading to the kitchen, while agent Doster stood by one John Graham who was already in the room when the three entered. Joupperi explained that Graham was his brother from California. As agent Magnuson reached the couch, he turned to face agent Doster and saw Graham, who was a karate instructor, raise his hand and strike agent Doster. Doster fell into the bedroom.

Upon observing this, agent Magnuson reached for his gun, hidden under his jacket; before he was able to draw it and before he could identify himself as a law enforcement agent, he was hit by a shot emanating from the kitchen. As he fell to the floor, still attempting to draw his gun, he saw the defendant, Thomas Roop, come from the kitchen and fire another shot at him. Magnuson returned the fire and ran into the bedroom. He and agent Doster, who had shot and killed John Graham after Graham had knocked him down, then exited the apartment and received assistance from the Aurora police.

Defendant, who fled, was apprehended within a short time. In a statement given to the police he admitted that several weeks prior to the incident he and Joupperi had met and discussed plans for the robbery and that Joupperi promised defendant a portion of the money if defendant held a gun on the victims.

Defendant and Joupperi were granted separate trials.

■■ Defendant appeals only from the convictions and concurrent sentences for the crimes of attempt robbery and conspiracy to commit robbery. He asserts that because these crimes were committed during the course of the attempt murder only the attempt murder conviction may stand. Multiple convictions are properly entered when the crimes are the result of separate acts, regardless of how closely related those acts are. (*People v. Green*, 62 Ill. 2d 146, 148-50 (1975); *People v. Williams*, 60 Ill. 2d 1, 14-15 (1975).) When it is found, however, that the several crimes arose from the same act or transaction, only the conviction for the most serious crime may stand. (*People v. Lilly*, 56 Ill. 2d 493, 495 (1974); *People v. Prim*, 53 Ill. 2d 62, 78 (1972).) In *People v. Prim*, the defendant and

several companions armed with guns robbed the passengers of a bus. During the course of the armed robbery, one of the passengers refused to relinquish her purse to the defendant, prompting him to shoot and kill her. He was convicted of attempt armed robbery and murder. The Illinois Supreme Court reversed the conviction for attempt armed robbery, holding that only the murder conviction could stand as both crimes arose from the same transaction.

In *People v. Williams*, defendant and another man came to the home of a Mr. and Mrs. Calderone late one evening and asked to use their telephone. Before determining whether he would allow them to use the phone, Mr. Calderone went into his bedroom, retrieved an unloaded revolver and returned to the door. Defendant and his companion forced their way into the home and when confronted with the revolver, shot and killed Mr. Calderone. They then robbed his body and robbed the victim's wife. Defendant was convicted of burglary, armed robbery and murder. The supreme court reversed the burglary conviction, noting that "although burglary and armed robbery involve different elements of proof and the men committed a series of acts, their unauthorized entry with the intent to commit theft and the actual theft by means of armed robbery constitute two offenses arising from the same conduct involved in robbing the Calderones." (*Williams*, at 14.) The court, however, refused to reverse the conviction for armed robbery, stating:

> "The purpose of the entry was robbery, not murder, and that objective changed to murder only when the robbers were confronted by Mr. Calderone with a gun in his hand. Then, they chose to commit a separate act for the purpose of killing Mr. Calderone. That shooting can be viewed as a means of removing an obstacle to their original objective of robbery, *but it is also evident that at least part of their reason for killing was to avoid injury or apprehension by Mr. Calderone.* * * *The convictions and sentences imposed upon the defendant for murder and armed robbery may both stand." (Emphasis added.) *Williams*, at 14-15.

In comparing the different results reached by the court in *Williams* and *Prim*, it is clear that the factor used to determine whether the crimes arose from the same or separate acts is defendant's purpose in committing the crimes. If throughout the entire transaction, defendant commits the crimes to further a single criminal objective, as was true in *Prim* (where the defendant was not confronted with a gun) then the crimes are the result of one transaction and only the most serious conviction may stand. If, however, the crimes are committed for separate and distinct purposes, then the acts constituting those crimes are viewed as separate and distinct and multiple convictions are proper. *People v.Williams*, at 14-15.

■■ In the present case, defendant shot agent Magnuson after the

latter attempted to draw his revolver; defendant then followed with a second shot at the agent. While not identical to the situation in *Williams*, the facts are closer to those in *Williams* than to the facts in *Prim*. As in *Williams*, defendant's response can be viewed not only as an act in furtherance of the initial purpose of robbery, but also as an effort to avoid the threat of apprehension or injury as the result of the agent's attempt to use his gun. This analysis is supported by defendant's statement to the police in which he told them he agreed to hold a gun on the victims of the robbery. Nowhere does the record reveal any prior intention on defendant's part to fire that gun during the ordinary course of the robbery. Accordingly, we find that the crimes of attempt murder and attempt robbery were committed for separate purposes and the convictions on both counts may stand.

We also find that the conviction for the crime of conspiracy to commit robbery must be reversed since it was committed during the same transaction. In *People v. Lerch*, 52 Ill. 2d 78 (1972), the defendant, who in an attempt to escape jail attacked and severely beat a jailer, pled guilty to attempt escape and aggravated battery. The court rejected the contention that the aggravated battery was complete before the attempt escape, stating that the substantial step toward the escape (a necessary element in the crime of attempt escape) was the battery upon the jailer. The court concluded that the conduct described in the attempt charge was identical to that of the aggravated battery and because both crimes arose from the same act, only the conviction for the more serious of the two—aggravated battery—would be affirmed. We find *Lerch* controlling in the present situation.

■■ The indictment for conspiracy to commit robbery charged that defendant Roop

"* * * with the intent that the offense of Robbery be committed, agreed * * * to the commission of a Robbery and in furtherance of such agreement [he] conspired and agreed * * * to take United States Currency from the person or possession of L. Robert Magnuson and William Doster and [he] attempted, forcibly, to subdue and overcome L. Robert Magnuson and William Doster in the attempt to remove money from their possession * * *."

Although it is true that the conspiracy was to commit robbery, not murder or attempt murder, and that the agreement—an element of the conspiracy—was entered into several weeks prior to the attempt robbery, the conspiracy was not complete until the substantial step toward the robbery was taken. As in *Lerch*, the final element of the crime—the substantial step—was committed in the course of the same transaction in which the attempt robbery was committed. Since defendant can be convicted of only the most serious crime committed during a single

transaction, the conviction for conspiracy to commit robbery is reversed.

The convictions for attempt murder and attempt robbery are affirmed. The conviction for conspiracy to commit robbery is reversed.

Affirmed in part; reversed in part.

RECHENMACHER, P. J., and DIXON, J., concur.