THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSE HEARD, Defendant-Appellant.

First District (4th Division)   Nos. 61436, 62712 cons.

Opinion filed October 20, 1977.

Nathaniel R. Howse, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Michael J. Madden, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County. The defendant, Jesse Heard, was tried before a jury, convicted in the circuit court of armed robbery and unlawful use of weapons, and sentenced to not less than five nor more than 15 years in the State penitentiary for armed robbery and concurrently one to two years for unlawful use of weapons. The cases were consolidated on defendant's appeal.

The issues submitted for review are (1) whether the court erred in admitting the transcript of the preliminary hearing testimony of a deceased witness; (2) whether the defendant was proven guilty beyond a reasonable doubt; (3) whether the armed robbery and unlawful use of weapons charges were both crimes arising from the same conduct, thereby prohibiting conviction of the lesser charge; and (4) whether the sentence imposed was excessive.

On February 18, 1972, at about 9 p.m., Andy Pickett and Wesley Taylor were robbed at gunpoint by two men. The robbery took place near the intersection of Central Park Avenue and Roosevelt Road, in Chicago, Illinois. Within minutes after the robbery, the defendant and another man were arrested and charged with two counts of armed robbery and unlawful use of weapons.

At trial, the first witness for the People of the State of Illinois (hereinafter "the People") was Investigator John Laskey, of the Chicago Police Department. Officer Laskey testified that on February 18, 1972, at about 9 p.m., he was on duty and was patrolling the area near Central Park Avenue and Roosevelt Road. He was in a squad car, with his partner, Lonnie Seagroves. Laskey and his partner were driving northbound on

Central Park Avenue when they saw four men standing in a formation of two men standing behind the other two. Laskey saw the two men at the rear shove the men standing at the front. He observed these events from a distance of about 80 or 90 feet. The area where the four men were standing was the site of an old abandoned gasoline station which had several cars parked in its lot. The figures suddenly disappeared from the police officer's view into the vacant lot. Officer Laskey drove the squad car forward (north) until the car reached the point where the four men had disappeared. The officer entered the lot and shone his flashlight in the area. He could tell the two men standing in the rear were armed. The man on the left had a shotgun and the man on the right had a pistol. At this time the officer was 25 feet from the four men. An older gentleman then ran toward the officer and told the officers he had just been robbed. Meanwhile, the two armed men began to walk away, toward the parked cars in the lot. The officers walked in the direction of the two men, and arrested both men, one of whom was the defendant, Jesse Heard. Several feet away from the point where Mr. Heard was arrested, a shotgun was found, hidden partially under a parked car. There were three persons sitting in a parked car in the area. These persons were searched by the police and released.

The next witness to testify for the prosecution was Wesley Taylor, one of the robbery victims. Mr. Taylor testified that on February 18, 1972, he and his friend, Andy Pickett, went to a store to buy alcoholic beverages at about 9 o'clock in the evening. The two men left home at 1137 South Central Park and walked south one block to purchase the liquor at a store. After leaving the store the two men walked north, back toward the house.

On the way back to the house a man with a shotgun told Mr. Taylor to "get on in there." Mr. Taylor looked over his shoulder for two seconds at the man, who then told Mr. Taylor if he looked back again he would blow Mr. Taylor's head off. Mr. Taylor did not look around any more, but saw someone with a pistol pointed at Andy Pickett. Mr. Taylor and Mr. Pickett were standing side by side and the men with the guns were right behind them. Mr. Taylor could feel someone going into his pockets. He saw lights, turned around and saw the police car. He told the police he had been robbed. By this time the two gunmen were walking away. The police arrested two people, including the defendant, Jesse Heard. Mr. Taylor identified Mr. Heard as the person with the shotgun.

The court then admitted into evidence, over objection by the defendant, the transcript of Andy Pickett's testimony which was given at the preliminary hearing held in this cause. Mr. Pickett, one of the robbery victims, died before the case came to trial.

At the preliminary hearing Andy Pickett testified that on February 18,

1972, at about 9:10 p.m., he was at 1155 South Central Park, walking with his friend Wesley Taylor. As he was walking, a man came and put a pistol to his head, while a second man put a shotgun to the head of Wesley Taylor. When asked if he saw the second man in court, Mr. Taylor identified Jesse Heard as the man. Mr. Pickett said he was told to "get up in there," as the man with the pistol went into his pockets. Pickett heard the man with the shotgun warn Mr. Taylor if he looked back again the gunman would blow the side of Mr. Taylor's jaw off. The witness then saw the second robber go into Mr. Taylor's pocket.

The next witness to testify for the People was Lonnie Seagroves, Officer Laskey's partner on the night the robbery took place. Officer Seagroves testified that on February 18, 1972, at 9 p.m., he was on duty as a Chicago policeman and was patrolling the area of Roosevelt Road and Central Park Avenue with his partner, John Laskey. They were in a squad car driving northbound on Central Park Avenue. As they stopped at a stoplight at the corner of Roosevelt Road at Central Park, he saw four men standing in a small alcove. He noticed one of the men was holding a shotgun at the head of another man. He called out for the man to hold it. The man with the shotgun turned to face the officer, then turned and started to walk away. He told the man to stop again and the man stopped. He then walked up to the man, told him to turn around, told him to lean over a car and put handcuffs on him. Jesse Heard was identified by the officer as the man he stopped. A Browning automatic shotgun was found six to eight feet south of the spot where Mr. Heard was stopped. The People rested at this time.

The first witness to testify for the defendant was Connie Vaughn. Miss Vaughn testified that on February 18, 1972, she was working as a cashier at the Big Bee Grocery store on the corner of Roosevelt Road and Central Park Avenue. She knew Jesse Heard because he was a frequent customer of the store. She remembered Jesse Heard coming into the store on February 18, 1972, at about 9 p.m. She remembered he purchased a light bulb and left the store after a few minutes. She could easily remember the date and the defendant being in the store on that night. Mr. Heard went into the store to buy a light bulb. The bulbs are packaged in pairs. She charged Mr. Heard for two light bulbs, and because he only wanted one bulb she had to make a refund. She noticed he did not come into the store for two weeks after this incident, which as unusual for Mr. Heard, since he shopped at the store almost daily. Two weeks later Heard came into the store and told Miss Vaughn he had been arrested earlier.

Jesse Heard then testified in his own behalf. Mr. Heard testified that on the date of the robbery he had returned home from school and remained at home until some time after 8 p.m. that evening. He then left his home

and walked to the Big Bee Supermarket. He went to the store in order to purchase a light bulb. He remembered seeing Connie Vaughn, the cashier, at that time. As Mr. Heard was walking down Central Park Avenue back toward his home, he saw a police officer, who he later learned to be Officer John Laskey, searching three men in a car parked at the curb. The officer asked Mr. Heard if he would like to run down the alley so the officer could try out his new gun. Mr. Heard answered he would not run. The arresting officer then left the three suspects in the car and arrested Mr. Heard. The first time Mr. Heard ever saw the shotgun was at the police station.

The Reverend Edna Norwood testified next for the defendant. Reverend Norwood is the pastor of the Holy Trinity Church of God and Christ, which is located at 5010 West End Avenue, Chicago, Illinois. She had known the defendant for over 12 years. Mr. Heard was an honorable boy. She knew Mr. Heard very well and he worked for the church. The defense then rested.

The defendant was found guilty of two counts of armed robbery, and unlawful use of weapons. He was sentenced to not less than five to not more than 15 years for the armed robbery conviction, and one to two years for the unlawful use of weapons conviction, the sentences to run concurrently.

Article I, section 8 of the 1970 Illinois Constitution provides, in pertinent part:

> "In criminal prosecutions, the accused shall have the right to * * * meet the witnesses face to face * * *."

Amendment VI of the United States Constitution provides, in pertinent part:

> "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; * * *."

The parties agree the leading case in Illinois on the issue of the admissibility of the preliminary hearing testimony of a deceased witness is *People v. Tennant* (1976), 65 Ill. 2d 401, 358 N.E.2d 1116 (see also *California v. Green*, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930.) In *Tennant*, the court, per Mr. Justice Underwood, held:

> "* * * where, as here, there was an adequate opportunity for cross-examination of the preliminary hearing testimony of a witness who dies prior to trial, the earlier testimony of that witness is properly admitted at trial." 65 Ill. 2d 401, 411, 358 N.E.2d 1116, 1121.

Although all parties agree with the statement of the court in *Tennant*, the question of whether "an adequate opportunity to cross-examine" was

in fact presented at the preliminary hearing does not lend itself to a per se determination and must be decided upon the circumstances of each case.

On appeal the defendant specifically claims he did not have an adequate opportunity to cross-examine the deceased witness to determine the reliability of his identification of the defendant as one of the robbers. An examination of the record concerning Andy Pickett's testimony, however, reveals the issue of the reliability of his identification was an important part of both the direct and cross-examinations of the witness during the preliminary hearing. The defendant's counsel, who was the same attorney who represented the defendant at trial, engaged in extensive cross- and re-cross-examination of Pickett, which included questions as to whether the area was illuminated enough to see, whether Pickett saw the suspect, how long Pickett saw the suspect and the approximate height of the suspect. This cross-examination of Andy Pickett ended with defense counsel saying, "I have no further questions."

■■ It is clear from the record the defendant has had the benefit of cross-examination at the preliminary hearing, and the complainant's preliminary hearing testimony was properly admitted into evidence.

The defendant next contends the evidence produced at the jury trial does not suffice to prove him guilty beyond a reasonable doubt.

There is no question a judgment of conviction can be sustained only by credible evidence which proves the guilt of the defendant beyond a reasonable doubt. (*People v. Coulson* (1958), 13 Ill. 2d 290, 149 N.E.2d 96.) The testimony of a single witness, however, if positive and credible, is sufficient to sustain a conviction. *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182.

In the case at bar, four witnesses identified the defendant as the robber. The record discloses Officer Laskey saw the defendant at the scene of the crime in possession of a sawed-off shotgun. Officer Seagroves testified he saw the defendant carrying a sawed-off shotgun and the defendant "made a complete turn to face me." Wesley Taylor stated the defendant was wielding a sawed-off shotgun while committing the robbery. Andy Pickett testified he saw the defendant robbing Wesley Taylor, while he placed a sawed-off shotgun up to Welsey Taylor's head.

Testifying on his own behalf, the defendant stated he was an innocent passerby who was arrested for no reason.

■■ On appeal, courts of review may not substitute their judgment for that of a jury on questions of credibility of witnesses, and may not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d

697.) This is so because the jury, acting in its peculiar capacity as trier of fact, has ample opportunity to observe the demeanor of the witnesses, assess their credibility and weigh the evidence (see *People v. Stevens* (1957), 11 Ill. 2d 21, 141 N.E.2d 33). We have made a complete search of the record and find the evidence fails to raise a reasonable doubt of guilt.

Regarding sentencing, the defendant claims the trial court erred in providing sentences for armed robbery and unlawful use of weapons, even though concurrent, as both crimes arose from the same conduct.

The Supreme Court of Illinois, in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, confronted the issue of determining when multiple convictions and concurrent sentences are permissible. The court, speaking through Mr. Justice Moran, stated:

> "We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 845.

A lesser included offense is defined in section 2—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 2—9(a)), as follows:

> " 'Included offense' means an offense which
>
> (a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, * * *."

The defendant was convicted of carrying a sawed-off shotgun, in violation of 'section 24—1(a)(7) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(7)). This section provides, in pertinent part:

> "A person commits the offense of unlawful use of weapons when he knowingly; * * * possesses or carries * * * any shotgun [with a barrel] less than 18 inches in length * * *."

The foregoing element must be shown over and above the proof the defendant was "armed with a dangerous weapon," which is a prerequisite to a conviction for armed robbery. Ill. Rev. Stat. 1971, ch. 38, par. 18—2(a).

■■ In the circuit court, the defendant was convicted of armed robbery and unlawful use of weapons. While the defendant's acts were closely related in time and place, the carrying of the shotgun and the armed robbery were separate and distinct acts requiring different elements of proof. In light of the *King* opinion, we hold the defendant's convictions and concurrent sentences for armed robbery and unlawful use of weapons were proper and are affirmed.

The defendant also maintains the prison sentence of five to 15 years in the State penitentiary was excessive.

The defendant was convicted of armed robbery and unlawful use of weapons. Armed robbery is a Class 1 felony. The minimum term of a Class 1 felony, by statute, is four years unless the court, having regard to the circumstances of the offense, sets a higher minimum term. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1.

■■  At the trial the court heard evidence the defendant, while carrying a sawed-off shotgun, stopped one of two men (the defendant's accomplice stopped the other man) and told the man, "If you look back again, I will blow the side of your head off." The defendant then continued the robbery by going through the pockets of this man, in search of money. The robbery, however, was interrupted by the appearance of two police officers.

In *People v. Gray* (1977), 40 Ill. App. 3d 52, 351 N.E.2d 339, this court, speaking through Mr. Justice Dieringer, held:

> "The Illinois Supreme Court has consistently held, where it is contended the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, Illinois reviewing courts should not disturb the sentence unless it clearly appears the penalty constitutes a great departure from the Illinois constitutional requirement that all penalties shall be proportioned to the nature of the offense. (*People v. Richardson* (1969), 43 Ill. 2d 318, 253 N.E.2d 420; *People v. Smith* (1958), 14 Ill. 2d 95, 150 N.E.2d 815.) Furthermore, it is the position of the Illinois Supreme Court the trial court is normally in a superior position during the trial and hearing in aggravation and mitigation to make a sound determination as to the punishment to be imposed than are the courts of review. *People v. McCullough* (1970), 45 Ill. 2d 305, 259 N.E.2d 19." 40 Ill. App. 3d 52, 55, 351 N.E.2d 339, 342.

We find the court properly weighed the facts before sentencing the defendant, and there was no abuse of discretion in sentencing.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.