THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARVIN VETTESE, Defendant-Appellant.

First District (4th Division)   No. 77-731

Opinion filed June 8, 1978.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Renee Goldfarb, and Richard Heytow, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Following a bench trial, Marvin Vettese and Michael Weber were convicted of conspiracy and attempt theft by deception. Two other defendants, Francis Niemi and Carol Weber, pleaded guilty to conspiracy and were sentenced to 3 years probation. Defendant Vettese was sentenced to 5 years probation and 210 days of periodic imprisonment after the trial court gave him a choice between that sentence and 1 to 3 years of imprisonment.

Defendant Vettese appeals the convictions and raises the following three issues for review: (1) Whether the defendant's convictions for both conspiracy and attempt theft by deception were proper in that they both arose out of the same series of acts; (2) whether the defendant's sentence to 210 days of periodic imprisonment was proper without the trial court specifying the days and hours defendant was to be released; and (3)

whether evidence of defendant's prior conviction was properly admitted in the hearing for sentencing.

The facts are not in dispute and unfold as follows: Defendant Vettese, using the name of John Marshall, contacted Mr. Tempel Smith, president of Tempel Steel Company, and represented himself as an agent of John L. Behr who, along with his mother, Edith Behr, owned some property leased to Mr. Smith. The defendant offered to sell the property to Mr. Smith for $2 million and advised him not to contact Behr personally. Mr. Smith testified that he had been interested in purchasing the property but had been advised by the owners that it was not for sale. Mr. Smith then contacted Earl Talbott, an attorney with the firm of Kirkland and Ellis, to represent him in the transaction.

The defendant, representing himself as John Marshall, then contacted Frank Romano, an attorney. Romano testified that John Marshall and Tom Allen (later identified as Michael Weber) told him they were agents of John Behr empowered to act on his behalf in the sale of the real estate in question.

A meeting was held on August 5, 1975, between Earl Talbott, Smith, Romano and his brother, Frank, and John Marshall to discuss the terms of the sale. Smith agreed to place $500,000 into an escrow account. Further testimony revealed that Marshall later supplied Romano with a tract search and a verified power of attorney to act for John L. Behr. The documents were given to Romano by a woman posing as Marshall's secretary. Other testimony revealed that two other defendants, identifying themselves as John L. and Edith Behr, opened a checking account at the First National Bank of Chicago. Co-conspirator Michael Weber was later identified by the bank representative as the man who called himself John Behr. Weber later offered a Lake Forest police officer, Frederick Erickson, "several thousand dollars" if he could obtain a photograph of Behr and a copy of his signature. The telephone number given to the bank representative was proved to be an answering service number obtained in the name of John Marshall.

Romano testified that he met with a John Behr, who was later identified as Weber, and upon being shown his identification—driver's license, voter's card, and printed checks—obtained his signature on a deed in trust and a trust agreement. On October 30, 1975, Romano called the real John Behr and at a subsequent meeting, discovered the fraud. In early November 1975, the State's Attorney's office was contacted, resulting in the convictions for conspiracy and attempt theft by deception.

Defendant argues first that the trial court erred in convicting him on the charge of conspiracy because that charge was based on the same physical acts which supported the conviction for attempt theft. He cites *People v.*

*King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, as authority for his position that multiple convictions are permissible only where a defendant has committed several different acts; and *People v. Roop* (1976), 39 Ill. App. 3d 710, 350 N.E.2d 236 to support his contention that the convictions for conspiracy and attempt theft by deception are based on the same set of acts and, therefore, cannot lie without resulting in unfair prejudice to the defendant. We disagree.

■■ A conspiracy conviction is supported by proof that an agreement existed between the defendants to commit an illegal act and that any one of the co-conspirators performed some act to further the conspiracy. (Ill. Rev. Stat. 1975, ch. 38, par. 8—2.) The agreement element of the conspiracy offense does not require a showing of specific words or acts to intend the commission of an illegal act. The existence of the conspiracy may be proved by circumstantial evidence; it can be inferred by the conduct and statements of the parties and from the surrounding circumstances of the particular occurrence. (*People v. Bailey* (1975), 60 Ill. 2d 37, 45, 322 N.E.2d 804, 809.) An act in furtherance of the conspiracy committed by any one of the co-conspirators is sufficient to bind all of the co-conspirators. *People v. Hoover* (1976), 35 Ill. App. 3d 799, 805, 342 N.E.2d 795, 799.

■■ The evidence has clearly shown that defendant Vettese and three other persons attempted to sell land belonging to John Behr without his authorization. The agreement element of the conspiracy offense was met with this proof. Vettese's act—contacting Smith with an offer to sell the land—was a sufficient act in furtherance of the conspiracy to sustain the conviction.

■■ Once the conspiracy is proved, any further illegal acts committed by any one of the parties in furtherance of the common criminal purpose imposes criminal liability on all the parties, whether or not they participated in the illegal act.

> "Where one attaches himself to a group bent on illegal acts * * *, he becomes criminally liable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not actively participate in the overt act itself." *People v. Tate* (1976), 63 Ill. 2d 105, 110, 345 N.E.2d 480, 483.

■■ The proof required to support the conviction for attempt theft by deception was an act by the defendant, or any other member of the group, that constituted a substantial step toward completion of the agreed upon offense. In our view, the execution of the trust deed and the letters of direction to complete the land transfer constituted a substantial step toward completion of the theft. Had there been no detection of the

fraudulent transfer at this point, the theft would have gone on to completion.

The defendant's contention that identical acts proved both the conspiracy and attempt theft is not supported by case law. The defendant cites *People v. King* (1976), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844 in support of this contention. Careful reading of *King* and the cases following it does not support this view. In *King*, the defendant was convicted of rape and burglary with intent to commit rape. He urged the court that since the criminal objective of the burglary was to commit the rape for which he was convicted, he could, therefore, only be charged for the more serious charge of rape. The supreme court disagreed with him and said:

> "Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (*King*, at 566.)

In *People v. Mayo* (1977), 53 Ill. App. 3d 152, 156, 368 N.E.2d 794, 797, the court applied the rule in *King* to vacate a conviction for battery and aggravated battery because the same physical act, *i.e.*, jumping on the decedent, was the basis for the conviction.

The rule in *King* has been applied to uphold convictions for both rape and aggravated kidnapping arising from a series of closely related acts as these offenses are not lesser included offenses. (*People v. Jones* (1977), 53 Ill. App. 3d 197, 205, 368 N.E.2d 452, 458.) *King* has also supported convictions for both armed robbery and unlawful use of weapons. "While the defendant's acts were closely related in time and place, the carrying of the shotgun and the armed robbery were separate and distinct acts requiring different elements of proof." *People v. Heard* (1977), 53 Ill. App. 3d 1042, 1048, 369 N.E.2d 229, 234.

■■ Applying this holding to the facts before us leads to the conclusion that the convictions were proper, even though they arose from a series of related acts. One was not a lesser included offense of the other and different elements were required for the proof of each offense.

Defendant next argues that his sentence should be remanded with directions to spell out the conditions and terms of the sentence of 210 days of periodic imprisonment. As authority for this contention he cites *People v. Natal* (1974), 18 Ill. App. 3d 939, 310 N.E.2d 672, wherein the court

remanded the defendant's sentence of periodic imprisonment so the defendant could care for his ailing wife.

At the time of sentencing, the defendant was given the option of 1 to 3 years imprisonment or 5 years probation with 210 days of periodic imprisonment. He chose the latter. On the day of sentencing, the defendant was unemployed. The trial judge, therefore, could not have been more specific about the defendant's hours of confinement, since the hours required for his employment had not yet been determined. Thus, *Natal* is inapplicable because no similarities to the special circumstances surrounding defendant Natal's request for periodic imprisonment are present in the case at bar.

We now turn to the question of whether it was proper for the trial judge to consider the defendant's prior conviction in determining sentence. The defendant cites *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, in support of his contention that evidence of the defendant's conviction for armed robbery 23 years ago should not have been considered in the hearing in aggravation and mitigation. We disagree.

■■ The *Montgomery* test, which prohibits the introduction into evidence of convictions over 10 years old except for purposes of impeachment, is only applicable to trial proceedings and has no bearing on the matters to be considered in hearings in aggravation and mitigation. It is well settled that prior convictions are relevant and pertinent in determining the appropriate sentence to be imposed. (*People v. Heise* (1966), 35 Ill. 2d 214, 220 N.E.2d 438.) In *People v. Smith* (1972), 8 Ill. App. 3d 270, 290 N.E.2d 261, this court, in affirming the conviction and sentence of a 63-year-old defendant for armed robbery and aggravated battery, noted:

> "The defendant's prior convictions, armed robbery in 1927, robbery in 1930 and receiving stolen property in 1952, although long past, were properly considered in aggravation and mitigation." (*Smith*, at 274.)

It is equally well settled that the imposition of a sentence is within the discretion of the trial judge who is in a better position to determine the weight to be given the various factors considered in the hearings in mitigation and aggravation.

> "We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review." *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.

Defendant in the case at bar was given a choice of sentences—the one

he chose was well below the maximum allowed by statute. The trial court properly considered the defendant's prior conviction in imposing sentence. The record does not indicate that the trial court abused its discretion. Therefore, the sentence given the defendant Vettese must be affirmed.

For the foregoing reasons, the judgment of the trial court is affirmed and the cause is remanded to the trial court for further proceedings in accordance with the provisions of section 5—7—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—7—1).

Affirmed and remanded.

ROMITI and LINN, JJ., concur.