THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*
GERALD STRONER, Defendant-Appellant.

Third District    No. 81-118

Opinion filed February 26, 1982.

Robert Agostinelli, Verlin R. F. Meinz, and Stephen H. Omolecki, all of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

A Will County jury convicted the defendant, Gerard Stroner, of

solicitation to commit murder, conspiracy to commit murder, and attempt murder. Concurrent terms of six years on each offense were imposed.

Gerard Stroner was indicted on November 5, 1980, for three offenses: solicitation to commit murder, conspiracy to commit murder and attempt murder. Pleas of not guilty were accepted on each charge. Subsequently, the State sought, by motion, to compel withdrawal of defendant's attorney, Robert M. Gray. The State's motion was based on the fact that another attorney in Gray's firm had been retained to represent in a marriage dissolution proceeding, one of the State's witnesses, the wife of the intended victim in the instant case. The State contended that this relationship created a conflict of interest denying defendant Stroner his constitutional right to effective assistance of counsel and would accordingly, require reversal of any conviction that might result. With Stroner present at the hearing on the motion, attorney for the State carefully detailed the nature of the conflict. Defense counsel Gray asserted that Mr. Stroner was aware of the fact that his firm was representing Susan McGrath, wife of the intended victim, and desired, nonetheless, that Gray continue as his defense counsel. The trial judge then questioned Stroner about the situation. Stroner acknowledged the dual representation of his defense counsel's firm and that he, Stroner, waived any conflict that might arise because of such associations. The trial judge then denied the State's motion to compel withdrawal of defense counsel.

On December 10, 1980, the trial commenced. The State's evidence tended to show that Gerard Stroner, a Crest Hill police officer, met with Dennis McCallister in February 1980 and asked him if he could arrange to have someone killed. At a subsequent meeting, Stroner told McCallister that William McGrath was the target victim. Stroner said he was in love with McGrath's wife, Susan, and that McGrath beat her all the time. McCallister agreed to kill McGrath for $500. Susan McGrath testified that although she had met Stroner several times, he was no more than a mere acquaintance.

McCallister and Stroner met numerous times. Ultimately, a price of $1,000 was agreed upon for McCallister to obtain a gun and to kill William McGrath. On one occasion, McCallister and Stroner followed William McGrath home from work so that McCallister could identify the victim. On another occasion, Stroner drove McCallister by the McGrath residence so that McCallister would know where the victim lived.

Stroner gave McCallister $200 in advance with the understanding that it be used to buy a gun and arrange for transportation the night of the killing. Instead, McCallister used the money for liquor and drugs. Finally, on April 21, 1980, Stroner insisted that William McGrath be killed that night. Later that evening, McCallister informed Stroner that he had been unable to obtain a gun or a ride. Stroner agreed to make the necessary

arrangements. Stroner then obtained a shotgun from the Crest Hill Police Department Armory. Stroner also gave $800 to Gordon Olson, a local restaurant assistant manager, with orders to hold on to the money until he or someone sent by him came to claim it.

Stroner had a shotgun and some shells when he picked up McCallister and drove him to a Bolingbrook parking lot where the killing was to take place. A Bolingbrook squad car arrived and the plan was modified to kill McGrath as he arrived home. Stroner then drove McCallister to the McGrath residence for that purpose. Afterwards, Stroner would pick up McCallister a block away.

McCallister hid behind a shed and waited for McGrath's return. When he arrived home, McCallister fired two shots at him then took off running. Untouched by either shot, McGrath telephoned the police.

McCallister hastened to the rendezvous point. There he was arrested by the awaiting Romeoville police. The shotgun was confiscated with one spent shell casing still in the chamber.

Gerard Stroner was the primary witness in his own defense. A Crest Hill police officer since 1971, he had never been arrested before the present charges were filed against him. McCallister was not his friend; however, Stroner had known him for years, having arrested him and questioned him many times about criminal activities.

Much of Stroner's testimony corroborated that given by McCallister and the other State witnesses. Stroner admitted asking McCallister to kill William McGrath. However, Stroner testified it was not his true intent to have McGrath slain. Rather, he claimed, his true intent was to obtain evidence against McCallister regarding several murders in which Stroner believed McCallister played a part. In fact, Stroner declared that he had no specific person in mind as the hypothetical victim when he initially asked McCallister if he would accept a contract to kill someone. Later, Stroner met William McGrath and was threatened by him because he suspected Stroner was having an affair with his wife, Susan. However, Stroner denied having any such relationship. Eventually, Stroner told McCallister that McGrath was the man he wanted killed.

Stroner did not tell anyone at the Crest Hill police department about his dealings with McCallister. He felt they could not be trusted.

Stroner testified that he was hoping to either arrest McCallister for possession of a weapon or trick McCallister into making admissions about the suspected previous murders when the attempt on McGrath's life failed.

In concluding his testimony on direct examination, Stroner admitted taking the shotgun from the police armory. However, he claimed that the shotgun shells that he gave to McCallister had been loaded with table salt. The trial judge then ordered a half-hour recess before commencing cross-examination. At that time, the following dialog ensued:

"THE COURT: All right, I'm going to direct Mr. Kielian that you not discuss the direct testimony of your client [the defendant Stroner] with him during the period of time that we are in recess.

MR. KIELIAN: How long is that recess going to be, Judge.

THE COURT: Half an hour.

MR. KIELIAN: half hour, ten after 11:00."

No objection was levied by Stroner or his attorney; recess was taken.

During cross-examination, Stroner acknowledged that during the planning of the McGrath murder, McCallister had admitted his involvement in a shooting in Rockdale and a bank robbery in Tennessee. Nevertheless, Stroner continued with his plan and did not attempt to arrest McCallister for either of those crimes.

At the conclusion of the trial, the jury returned guilty verdicts on all three counts. Stroner was then sentenced to concurrent terms of six years on each conviction.

Several issues confront us on appeal. Initially, Stroner claims that his right to effective assistance of counsel was violated by the trial court's order which prohibited him from discussing his testimony with his attorney during a half-hour recess between his direct and cross-examination. It is well settled that the right to counsel includes the right to the effective assistance of counsel. (*Powell v. Alabama* (1932), 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55.) That the criminal defendant is entitled to consult with his attorney during the course of his trial is not disputed. (*Geders v. United States* (1976), 425 U.S. 80, 47 L. Ed. 2d 592, 96 S. Ct. 1330.) However, this right, as others, does not exist in a vacuum and must flex to accommodate other equally important considerations. As such, the right to consult with counsel is subject to reasonable restrictions to preserve the integrity of the truth-seeking process and to maintain an orderly trial procedure.

■■ In the instant case, the trial judge's order was narrow in scope. Stroner was not barred from consulting with his attorney. Rather, one topic of discussion was prohibited: the direct testimony Stroner had just given. Furthermore, the order was not without reason. It was designed to assure the integrity of the legal process, specifically the cross-examination that would immediately commence after the recess. Moreover, the duration of the proscription was 30 minutes. During this time Stroner and his attorney were free to discuss any topic other than the testimony given by Stroner during his direct examination. Accordingly, we find no violation of the defendant's right to the effective assistance of counsel.

Next, Stroner argues that he was denied his right to effective assistance of counsel because his attorney's law firm also represented, in a divorce proceeding, the intended victim's wife, a prosecution witness.

A month prior to trial, Stroner entered pleas of not guilty to the three charges. On that same day, the State presented a motion to compel

withdrawal of the defendant's attorney for the very reason now raised as error by the defendant. A hearing was held on the motion with the defendant present. The following colloquy transpired:

"MR. MAZZONE: * * * Now, Judge, the Law Firm of Bolden, Gray and Kleczek does not represent merely another State witness. They represent the wife of the victim in this case.

The charges against this defendant are attempt murder, conspiracy, and solicitation to commit murder. The focus of those charges are simple.

Mr. Gray represents Susan McGrath, and I feel that the case cited will show your Honor that reversal is mandated where counsel is not—either the defense has not given full and voluntary waiver of any conflict that might exist in the future, because very simply, your Honor, I don't think the State wants to be put in a position to try such an important case or a complex case and have it reversed on the grounds that there has not been a waiver by the defendant of any conflict, and I believe a conflict does exist.

I believe that Mr. Gray's ability to cross-examine Susan McGrath, who is the principal witness for the State, would be fettered, would be somewhat other than as ordinary.

As I understand from Susan McGrath, the dissolution of marriage between her and her husband is bitter, to say the least, and that the firm of Bolden, Gray and Kleczek possess knowledge from both sides, and I don't believe that they can effectively cross-examine Susan McGrath because of the dual client-attorney relationship.

THE COURT: Mr. Gray?

MR. GRAY: Your Honor, Mr. Stroner is aware of the fact that we are representing Susan McGrath, who is a rather unlikely witness in the criminal prosecution.

She has been interviewed, I think, four or five times, and there are so many inconsistencies in her statements that I seriously doubt that either side would call her as a witness, but notwithstanding that, Mr. Stroner is totally aware of the fact that we are representing Mrs. McGrath and desires that we continue to represent him in this proceeding, so that there is no conflict, and from what such conflict that might exist, Mr. Stroner is prepared to waive at this time.

THE COURT: Is that correct, Mr. Stroner?

THE DEFENDANT: Yes, it is.

THE COURT: You understand that Mr. Gray and his law firm, or a member of his law firm, represents a potential witness against you in this case?

THE DEFENDANT: Yes, sir, I do.

THE COURT: And you are willing to give up whatever conflict may potentially exist because of that representation?
THE DEFENDANT: Yes.
THE COURT: You have full knowledge of these facts?
THE DEFENDANT: Yes, I do.
THE COURT: And so far as your concerned, Mr. Gray can continue to represent you, is that correct?
THE DEFENDANT: Yes.
THE COURT: Do you have any response, Mr. Mazzone?
MR. MAZZONE: Well, that's exactly what the State was seeking.

I don't acknowledge waiver by defendant. I think in this case—I believe a waiver is acceptable."

The trial judge then denied the State's motion to compel withdrawal of the defendant's chosen counsel. The trial judge was correct.

The Supreme Court as long ago as *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to Counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

■■ We think it clear from the record that defendant Stroner waived any conflict of interest that may have resulted from the dual representation of his counsel's law firm. Stroner's experience with the legal system aided his ability to appreciate the relationship of the parties and the possibility of conflicting interests. Even without such a background, Mr. Mazzone, attorney for the State, set forth in concise terms the nature of the potential for conflict.

While waiver may not be casually inferred, we cannot ignore the defendant's own statements. Defense counsel was Stroner's own private, chosen attorney. Stroner indicated he understood the dual representation of his attorney's law firm and he waived any conflict that might exist. He desired his chosen attorney to continue to represent him. It is well settled that a criminal defendant has the right to counsel of his own choosing. Had the trial judge forced the defendant's attorney to withdraw, we would, no doubt, be considering that precise point on appeal instead of the one now before us.

Stroner petitions this court to recognize that valid argument supports his notion that a *per se* conflict of interest may never be waived. While

argument on the matter may or may not exist, the law in Illinois is settled: a conflict of interest may be waived.

■■ We note as an aside, that the defendant's use of the term *"per se* conflict of interest" is something of a misnomer. The elements of a conflict of interest must be proved just as anything else must be. The Illinois Supreme Court, however, has adopted a *per se* rule as regards prejudice resulting from a conflict of interest. Specifically, in *People v. Stoval* (1968), 40 Ill. 2d 109, the court decided that where a defense counsel, without knowledgeable assent of the defendant, might be restrained in representing the defendant's interests due to his commitments to others, there is no necessity for the defendant to show actual prejudice. Hence, we recognize a *per se* prejudice rule as regards a conflict of interest. This *per se* rule in no way invalidates a defendant's waiver. As was acknowledged by the court in *Stoval,* knowledgeable assent by the defendant, in fact, vitiates any claim of conflict of interest.

More recently, our supreme court in *People v. Fife* (1979), 76 Ill. 2d 418, confronted again the problem of conflict of interest. An integral element of their analysis was the amount of information possessed by the defendant about his counsel's other professional commitments. What emerges from *Fife* and *Stoval* is that where a defendant is fully informed about his counsel's multiple commitments and knowledgeably assents thereto, a valid waiver results. Subsequently, a defendant may not be heard to complain he was denied effective assistance of counsel because his defense counsel labored under a conflict of interest. Simply stated, a conflict of interest may be waived. Such is the case here. As discussed previously, our analysis of the record and the attendant circumstances reveals a knowing waiver by Stroner in open court.

Finally, Stroner urges this court to vacate his conviction and sentence for conspiracy to commit murder because it was based on the same acts as his conviction for attempt murder on an accountability theory. In our scrutiny of the record, we do not find this claim raised in the defendant's post-trial motion. Eleven grounds of error were raised; none remotely relate to this issue. Supreme Court Rule 366 defines the powers of a reviewing court and our scope of review. Section (b)(2)(iii) of that rule provides that "A party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." (73 Ill. 2d R. 366(b)(2)(iii).) Moreover, our supreme court similarly announced in *People v. Pickett* (1973), 54 Ill. 2d 280, that the failure by the defendant to raise a claim of error in the written motion for a new trial constitutes a waiver of that issue. We note, however, that at the sentencing hearing, after all post-trial motions were heard and denied, and after the State made their recommendation as to the sentencing, defendant's counsel opened his colloquy with the following statement:

"MR. GRAY: Thank you, Judge. Up to this point, Your Honor, I

have kept my nose out of this case, and I am not even sure whether the Court has ruled as to whether the conviction, whether the verdicts and whether judgment upon those verdicts must stand as to all of the offenses for which the Defendant was convicted. We have solicitation and conspiracy which are inchoate offenses, we have a conviction for a substantive offense, because although attempt murder in the statute is an inchoate offense, it's a substantive offense, and I don't know that where the conspiracy and the solicitation results in an attempt that the substantive offense be committed and the Defendant is convicted of that attempt, whether it is, in fact, proper for the Court to convict the Defendant of the inchoate offenses. But I'll attempt to come back to· that."

Defendant's counsel never does come back to that point. The trial judge, however, does address the point before imposing sentence. He found the three offenses all part of a comprehensive series of acts but that there is sufficient distinction in the acts of the defendant over the course of time to support findings of guilty to all of the three offenses.

■■ Regardless, this issue is waived as it was not properly preserved as required. However, under the authority of Supreme Court Rule 615, we consider the merits of defendant's argument as substantial rights are involved. Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

The defendant relies on *People v. King* (1977), 66 Ill. 2d 551, to support his claim to vacate his conspiracy conviction. In *King*, our supreme court stated that multiple convictions may not stand where: (1) more than one offense is carved from the same physical act; or (2) when multiple acts are involved and one or more offenses are lesser included offenses. The defendant here contends that the acts which constituted the conspiracy charge are the same acts used to support the charge for attempt murder on an accountability theory. We agree. We also find the same true for the solicitation charge. We find that solicitation to commit murder is a lesser included offense of conspiracy to commit murder.

Solicitation occurs when one commands, encourages or requests another to commit an offense. Conspiracy occurs when the other party agrees to the commission of that offense and performs an act in furtherance of that agreement. Ill. Rev. Stat. 1979, ch. 38, par. 8—1 *et seq.*

We recognize a divergence of opinion on this issue. *People v. Latham* (1979), 73 Ill. App. 3d 995, 997-98; *People v. Harvey* (1981), 95 Ill. App. 3d 992, 1002), and see *People v. Mays* (1981), 93 Ill. App. 3d 352, 355 (Justice Barry dissenting).

In *Latham*, the defendant was charged with conspiracy and solicitation to commit murder. Defendant and the victim's wife engaged in a plot to kill the wife's husband, collect the insurance money on the husband's life, and split the proceeds. The defendant pleaded guilty to both offenses. The trial judge imposed a single sentence, believing solicitation

was a lesser included offense of conspiracy. The appellate court reversed, concluding without analysis that it was "* * * obvious that neither solicitation nor conspiracy is a lesser included offense of the other." (73 Ill. App. 3d 995, 997.) *Harvey*, as well as *Mays*, merely recite this holding without analysis.

■■ A lesser included offense is one comprised of some, but not every element, of the greater offense. The greater offense will include every element of the lesser offense plus some other elements so that it becomes impossible to perform the greater offense without committing the lesser one. This is not only a statutory precept (Ill. Rev. Stat. 1979, ch. 38, par. 2—9), but also a judge made rule. *Prindiville v. People* (1866), 42 Ill. 217, 220.

To solicit means to ask. The statutory definition of solicitation adds to command and to order. To conspire means to agree. The statutory definition of conspiracy adds the performance of an act in furtherance of that agreement. The end sought, of course, must constitute an offense in order for either solicitation or conspiracy to be an offense.

■■ A conspiracy or agreement would necessarily include a command, an encouragement or a request. One of these elements would have to precede the agreement. In contract terms, they would constitute the offer. The legal conspiracy would arise when two additional factors transpired. First would come the acceptance. Considered in these terms, it is clear that you could not have an acceptance without an offer. That is to say, there is nothing to accept or agree to if there is no offer in the first place. The crime of statutory conspiracy would not be complete, however, until the act in furtherance of that agreement took place. That is the second event, post solicitation, that makes the crime of conspiracy complete. Thus, it is seen that conspiracy is a crime consisting of three elements, they being request, agreement, and act. The first element constitutes the crime of solicitation. When the two additional elements are added, you have the crime of conspiracy.

■■ Continuing one step further, we now analyze the crime of attempt murder on an accountability theory. Attempt occurs when a person does any act which constitutes a substantial step toward the commission of an offense. Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a).

The Criminal Code of 1961 provides as follows:

A person is legally accountable for the conduct of another when: * * * Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).)

Thus, the crime of attempt murder on an accountability theory includes

every element of the crime of conspiracy plus the additional element that the act in furtherance which makes the conspiracy complete must constitute a substantial step toward the commission of the crime of murder in order to complete the crime of attempt murder. In other words, it is impossible to commit attempt murder on an accountability theory without necessarily committing the crime of conspiracy. Therefore, the crime of conspiracy to commit murder is a lesser included offense of attempt murder on an accountability theory.

■■ From our reading of the record we believe it clear that the acts which support the conspiracy charge are the same which support the attempt murder charge. Thus, the multiple convictions cannot stand, and we vacate the conviction and sentence for conspiracy and solicitation under the *King* rule.

■■ In view of the vacating of the conspiracy and solicitation convictions, we vacate the sentence as to the attempt murder conviction and remand the case to the trial court for reconsideration and resentencing as to the attempt murder conviction. Such remand is not to indicate that the six-year sentence imposed is necessarily inappropriate. Rather, it is done to indicate that sentence should be imposed free from any consideration that the defendant also stands guilty of the lesser included offenses. Sentence should be imposed as though the defendant stands convicted of the single offense of attempt murder.

For the reasons herein stated, the conspiracy and solicitation convictions are reversed. We vacate the sentence and remand to the Will County circuit court with directions to hold a new sentencing hearing on the attempt murder conviction which we affirm.

Affirmed in part, reversed in part, and remanded with directions.

STOUDER, J., concurs.

JUSTICE BARRY, concurring in part and dissenting in part:
While I agree with the result reached by the majority on the first issue addressed—namely, whether the defendant was denied his right to effective assistance of counsel when the trial court ordered him not to discuss his testimony with counsel during the recess between the defendant's direct and cross-examination—I believe that the issue merits a few additional comments in light of recently decided case law. After the parties had submitted their briefs, but prior to oral argument, the State moved to add authority by citing *People v. Seider* (1981), 98 Ill. App. 3d 175, 423 N.E.2d 1217. The State's motion was allowed, and defendant was permitted to respond thereto.

In *Seider*, the defendant was told that he could not discuss his

testimony with anyone during a recess between defendant's direct and cross-examination. On appeal, the State argued initially that the issue was waived because defendant had failed to object to the court's order at the time it was given and because the issue had not been presented to the trial court in defendant's post-trial motion. The appellate court, after reviewing relevant case law, concluded that the case before it was distinguishable from *Geders v. United States* (1976), 425 U.S. 80, 47 L. Ed. 2d 592, 96 S. Ct. 1330, and *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96 (wherein the United States Supreme Court and the Illinois Supreme Court found reversible error where defendants were prevented from consulting with their attorneys during recesses), in that neither the defendant nor defense counsel in *Seider* requested or indicated a need to confer with the other. Instead, the *Seider* court relied on *United States v. Leighton* (2d Cir. 1967), 386 F.2d 822, wherein the Second Circuit Court of Appeals held that it is not reversible error to impose an embargo order preventing a defendant from consulting with his attorney if the record does not show that defense counsel had something to discuss with the defendant.

In *Leighton* and *Seider*, as in the present case, the recess involved a relatively short period of time, unlike *Geders* and *Noble* which both involved overnight recesses. Recognizing that the trial judge needs to have broad—but not unlimited—powers in controlling the progress of the trial (*Geders v. United States* (1976), 425 U.S. 80, 87, 47 L. Ed. 2d 592, 598, 96 S. Ct. 1330, 1334-35). I choose to review the trial judge's determination on this issue only to consider a possible abuse of discretion.

One example of the trial court's power and its limits concerns the power to control the timing of testimony. If, for instance, it is 3:30 in the afternoon and the next witness to testify in a criminal trial happens to be the defendant, the trial judge may legitimately inquire of counsel how long the defendant's direct testimony is expected to take and how long cross-examination might take thereafter. With this information in mind, the trial judge may decide whether or not any part of the defendant's testimony is to be heard before adjourning for the day. This decision is a common exercise of the trial judge's discretion. To further order that during the overnight recess the defendant may not consult with counsel, however, is an abuse of discretion because such order impairs the defendant's sixth amendment right to effective assistance of counsel. (*Geders v. United States; People v. Noble.*) Likewise, it would be an abuse of discretion to impose such an order during a dinner recess if either the defendant or his counsel expressed a need to consult during that period because, again, the order would impair the defendant's sixth amendment rights.

On the facts before us, wherein the recess was of a relatively short duration, as opposed to overnight, and neither defense counsel nor the

defendant expressed a need to consult with the other, the trial court did not abuse its discretion in ordering defense counsel not to discuss the defendant's testimony with him over the recess. The defendant's right to effective assistance was not impaired by the order. On this basis, I concur with the result reached by the majority.

In addition to reciting my views on the above issue, I must respectfully dissent from the majority's views on the one-act one-crime issues presented in this case.

I agree with the majority that, if multiple convictions had been entered erroneously by the trial court, the matter would be a sufficiently serious violation of the defendant's substantial rights as to warrant our review under the "plain error" rule. The convictions in the present case, however, were entirely proper in light of the multiple acts involved, culminating in attempt (murder) on an accountability theory. Initially, I believe that it would be less than honest not to point out that neither party has briefed or argued the issue of whether the defendant's convictions for solicitation and conspiracy can stand in light of *People v. King*. In fact, the only one-act one-crime issue raised by the parties on appeal concerns whether the defendant's convictions for conspiracy and attempt (murder) on an accountability theory may stand.

Whereas there is authority in Illinois for vacating convictions, despite failure of the parties to raise the issue on appeal where multiple convictions have been entered for a single offense (*People v. Evans* (1979), 80 Ill. App. 3d 87, 398 N.E.2d 1219), in my opinion this court should confine its *sua sponte* review of issues to those which are settled law.

In this case, the majority has determined that the defendant's conviction for solicitation may not stand with his conviction for conspiracy. In so deciding, the majority erroneously asserts that there exists a "divergence of opinion" on the issue. Until the majority's opinion herein, there was no such divergence. (See *People v. Latham*; *People v. Harvey*.) For this court to *sua sponte* overrule settled case law without affording the parties an opportunity to present arguments on this issue is contrary to the purpose of established rules for appeals which promote the type of careful consideration that a court of review is expected to apply. (Ill. Rev. Stat. 1979, ch. 110A, par. 602 *et seq*.) Furthermore, the majority's analogy of the criminal offenses of solicitation and conspiracy to the offer and acceptance elements of a contract is fatally defective, as a cursory review of the statutory definitions of the two offenses readily reveals. As observed by the court in *Latham*:

> "To prove the offense of solicitation, the State must show that an individual, with the intent that an offense be committed, requests another to commit that offense. (Ill. Rev. Stat. 1975, ch. 38, par. 8—1(a).) To prove a conspiracy, the State must show that an

individual agrees with another to commit an offense and then performs an act in furtherance of the conspiracy. Ill. Rev. Stat. 1975, ch. 38, par. 8—2(a)." 73 Ill. App. 3d 995, 997-98.

Contrary to the majority's opinion, the agreement element for conspiracy does *not* necessarily include a command, encouragement or request by one individual to another to commit an offense. Certainly one can agree with another to commit an offense without one party having asked the other to commit that offense. Therefore, even if this were a proper case to reconsider the one-act one-crime aspect of convictions for solicitation and conspiracy, I could not subscribe to the rationale applied by the majority herein in reaching its unprecedented conclusion.

The second one-act one-crime issue considered by the majority— whether the defendant's convictions for conspiracy and attempt (murder) on an accountability theory may stand in light of *People v. King*—is, in my opinion, properly before this court. This issue, as observed by the majority, was raised in the trial court at the defendant's sentencing hearing. Inasmuch as the issue does not concern any claim of error in the defendant's trial, I believe that trial counsel need not have included the issue in the motion for a new trial. Instead, counsel properly preserved the issue for appeal by bringing it to the trial court's attention at the earliest appropriate opportunity—that is, at the sentencing hearing. The parties on appeal have fully briefed and argued the question of whether the defendant may properly stand convicted of both conspiracy and attempt (murder) on an accountability theory. Having considered the arguments of counsel and relevant case law, I find that the defendant's position must fail.

The defendant grounds his argument on appeal on *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, wherein the Illinois Supreme Court stated that multiple convictions may not stand where: (1) more than one offense is carved from the same physical act; and (2) when multiple acts are involved and one or more offenses are, by definition, lesser included offenses. The court cautioned, however, that multiple convictions and concurrent sentences are permissible in cases where multiple acts are committed which support different offenses which are not by definition lesser included. 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.

The defendant argues on appeal that the same physical acts which constituted proof of the conspiracy charge were also used to convict him of attempt (murder) on an accountability theory. The defendant's argument is essentially the same as that considered by the First District Appellate Court in *People v. Vettese* (1978), 61 Ill. App. 3d 279, 377 N.E.2d 1168.

In *Vettese*, the defendant and three other persons agreed to sell land owned by another without the owner's authorization. The defendant

contacted a prospective buyer and an attorney to handle the transaction. One of the defendant's co-conspirators, after a series of other transactions, eventually signed the owner's name to a deed of trust and a trust agreement. The fraud was thereafter discovered, and the defendant was convicted of conspiracy and attempt (theft by deception). On appeal, the defendant, relying on *King*, claimed that the trial court had erred in convicting him of the conspiracy charge because that charge was based on the same physical acts which supported the conviction for attempt (theft by deception). The court rejected the defendant's argument. Initially the court found that the agreement element of the conspiracy offense was met with proof that the defendant and three others attempted to sell land belonging to another without his authorization. The second element of the conspiracy offense—an act in furtherance of the conspiracy—was met by the defendant's act of contacting a potential buyer and offering to sell the land.

Once these acts had established the elements of conspiracy, further acts which constituted a substantial step toward completion of the agreed upon offense, whether committed by the defendant or any other member of the group, imposed on the defendant criminal liability for attempt (theft by deception). In *Vettese*, the substantial step to prove attempt was found to be the execution of a trust deed and letters of direction to complete the land transfer. The act constituting this substantial step was, in fact, committed by one of the defendant's co-conspirators rather than by the defendant himself.

In the present case, as in *Vetesse*, the acts sufficient to comprise the conspiracy offense were completed before the substantial step to establish the second offense was taken by the defendant's co-conspirator. The State in the present case, proved the existence of an agreement between the defendant and McCallister to commit murder. In furtherance of that agreement, the State proved that the defendant provided McCallister with a weapon and transported McCallister to the intended victim's residence. The agreement to commit murder plus the defendant's acts in furtherance of that agreement thus complete the offense of conspiracy. McCallister's act of discharging the gun with the intent to kill the intended victim constituted the substantial step element of the offense of attempt (murder). On an accountability theory, this act imposed criminal liability for the additional offense of attempt (murder) on the defendant. See *Vettese*.

Thus analyzed, the offenses of conspiracy and attempt (murder) were not carved from the same physical acts. Nor can it be said that either attempt or conspiracy is, by definition, a lesser included offense of the other. Different elements were required to prove each offense, and it cannot be said that one offense could be established by proof of a less

culpable mental state than the other. Ill. Rev. Stat. 1979, ch. 38, par. 2—9(a).

Because the trial court properly ruled that the acts comprising solicitation, conspiracy and attempt (murder) were sufficiently distinct to sustain convictions for all three offenses, I would affirm the defendant's convictions.