THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD H. GRICE, Defendant-Appellant.

Fourth District   No. 14376

Opinion filed March 23, 1978.

Richard J. Wilson and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry and Marc D. Towler, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant was charged with information in the circuit court of Sangamon County with two offenses of robbery. After a jury trial he was found guilty and sentenced to imprisonment for 6 to 18 years, such sentence to run consecutively to a 2- to 12-year sentence for which he was on parole at the time of the offenses charged herein. This appeal followed.

On appeal defendant raises three issues: (1) error of the trial court in failing to suppress evidence of defendant's identification pretrial by the victims; (2) error of the trial court in failing to suppress evidence of identification since it was the poisonous fruit of an illegal arrest; and (3) error of the trial court in failing to exercise its discretion under the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1975, ch. 91½, par. 120.1 *et seq.*).

Since defendant does not challenge the sufficiency of the evidence to convict, only a brief resume will be required. Further exposition of the facts will be made only to clarify certain areas in this opinion.

The victims, husband and wife, had been in a Springfield tavern and upon leaving were about to enter their automobile. A man rushed up and seized the wife's purse and pulled her to the ground. He then threw the purse to two girls who were standing nearby. One of the girls removed the wife's billfold from the purse and the husband seized it back from her. The assailant then knocked the husband to the ground, seized the wife's billfold, took the husband's billfold also, and then departed. The husband was knocked unconscious when he hit the ground.

The trial court held a hearing on a motion to suppress identification; a

summary of the evidence adduced is as follows. When the husband regained consciousness at the scene, he saw his wife talking to a policeman. She gave him a physical description of the robber as being a 6 foot 2 inch black male weighing about 205 pounds, wearing a colored shirt and some sort of a necklace.

The incident happened about 7:15 p.m. and at about 3 a.m. the following morning the police came to the victims' residence with some nine mug shots; at that time they told the victims that they had a suspect in custody. While the victims were not so told, the defendant's picture was one of the nine.

The husband said that he observed the robber from about 10 to 12 feet away for about four or five seconds. The wife said she got one good look at the robber when he was getting ready to run and this was from about 2 to 3 feet away. Both victims picked the defendant's picture from among the mug shots shown to them.

In making the identification both victims emphasized the light skin color and "glary" eyes. They also mentioned his beard and moustache, but attached less importance to them than to the skin color and the eyes.

Later in the day a lineup was held with three persons in it, one of whom was defendant. All three were black but only one other had a moustache; only defendant had a full beard. Both of the victims, upon viewing the lineup separately, identified defendant.

The trial court first found the identifications to be suggestive, but upon receiving the testimony of the victims that the beard did not play an important part, but that the skin color and the "glary" "wild" eyes were the most significant characteristics to them, the trial court denied the motion.

The police officer conducting the lineup testified that ordinarily he prefers to have five individuals but on this occasion his superior told him to use three. He thought that the lineup was fairly conducted.

Concerning the first issue, *viz.*, identification: our supreme court in the recent case of *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, following *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, adopted the totality-of-circumstances test in determining whether an out-of-court identification is too suggestive. Quoting from *Manson*, the court said that the factors to be considered are:

> " '[T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' " *Manion*, 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1317.

Defendant's basic argument, as we understand it, is that the trial court,

as the trier of fact, erred in finding that the pretrial identification was not suggestive. Tested by the *Manson/Manion* elements set forth above, we disagree.

Both witnesses testified as to their opportunity to observe. While it might have been short, there is nothing in the record to impugn its reliability, especially in view of the second factor, the degree of attention. It is a fair inference from the evidence that the robbery, like Dr. Johnson's definition of a hanging, wondrously concentrated the mind. The confrontation at the tavern was an experience that none of the parties is likely soon to forget. The human mind daily receives thousands of impressions and observations which it quickly places in some inactive file, but a startling event will carry a lasting memory. Few adults past age 50 today can say where they were or what they were doing on December 7, 1940, but nearly every one of them can give an accurate description of his whereabouts and activities on the afternoon of December 7, 1941.

The victim-wife's description of the robber was essentially accurate and both victims were in total agreement on the outstanding characteristics, the light skin and unusual feature of the eyes. Furthermore, they had a high level of certainty both at the pictorial showup and the lineup. The former occurred within 10 hours of the occurrence and the latter within 24 hours.

■■ The trial court had the opportunity to observe the witnesses and his findings of fact are entitled to great weight. While at first he wavered on the subject of suggestiveness, nevertheless, after hearing all the evidence, he concluded that neither identification was tainted. In his position, we too, might have felt some initial reservation, but the entire body of evidence amply supports his conclusions under the factors delineated in *Manson/Manion.*

Defendant further complains of an in-court identification, and in his brief and argument somewhat confuses the pretrial and in-court situations. No objection was made to the in-court identification and it was not alleged as error in the post-trial motion. In these circumstances there could be a waiver of the point. (*People v. Meredith* (1976), 37 Ill. App. 3d 895, 347 N.E.2d 55.) However, we need not reach any procedural deficiency because the *Manson* court, quoted in *Manion,* held any in-court identification in the "wake" of a reliable out-of-court identification admissible.

■■ Turning to the second issue, that of illegal arrest, we note first that the question was never raised in the trial court and thus is controlled by the decision of the supreme court in *In re Lamb* (1975), 61 Ill. 2d 383, 387, 336 N.E.2d 753, 755-56, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672, wherein the court said:

"The legality of [defendant's] arrest cannot, as earlier noted, be

determined from the record since the only information on the issue is the testimony of Officer Soil that he and Blackley picked up respondent on the basis of information left for them by the day-watch officers. The State's failure to present other evidence concerning the arrest obviously resulted from respondent's failure to raise the issue in the trial court. We hold that, in such circumstances, the issue has been waived and cannot be raised for the first time on appeal."

To like effect is *People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.

Nor do we feel justified in considering the matter under the doctrine of plain error. Plain error arises as a result of something in the record, perhaps unobjected to, which a reviewing court may consider even though a proper foundation has not been laid. It is affirmative matter. We do not believe that plain error can be predicated on a void, such as we have here. The question appears nowhere in the record and in this court defendant seeks to take advantage of something that never happened, rather than something that happened erroneously. Neither *Lamb* nor *Nilsson* considered the matter as plain error and we likewise, following their example, decline to do so.

The third and last contention or error revolves about the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1975, ch. 91½, par. 120.1 *et seq.*). Section 8 of that act (par. 120.8) provides in part as follows:

"An addict * * * convicted of a crime is eligible to elect treatment * * * unless (a) the crime is a crime of violence* * *." Ill. Rev. Stat. 1975, ch. 91½, par. 120.8.

Section 10 of the act (par. 120.10) provides in part as follows:

"If a court has reason to believe that an individual convicted of a crime is an addict * * * and the court finds that he is eligible to make the election provided for under Section 8* * *." Ill. Rev. Stat. 1975, ch. 91½, par. 120.10.

It is now beyond dispute that admission to treatment under the act is discretionary with the trial judge and many cases have held that the record must show an exercise of that discretion, including our own prior decisions in *People v. Dill* (1974), 23 Ill. App. 3d 503, 319 N.E.2d 240; *People v. Elsner* (1975), 27 Ill. App. 3d 957, 327 N.E.2d 592.

In the case at bar the trial judge had no occasion to exercise discretion because there existed a statutory bar under section 8. The legislature has not defined specifically what is meant by "a crime of violence" and for purposes of this opinion we need not explore the question of the outer limits of that doctrine in the context of the Dangerous Drug Abuse Act. The record in the case at bar showed that the victim was knocked unconscious and suffered a broken collarbone. The crime involved here

was one of violence. Therefore, under the express terms of section 8, defendant was not eligible to elect treatment. Since he was not, any exercise of discretion under section 10 would be an operation in futility and hence, unnecessary.

This is the distinguishing feature of this case from *Dill* and *Elsner.* In neither of them did the record show on its face that the crime involved was one of violence (although it may have been) and hence, it was necessary to remand them for further proceedings to determine eligibility and then to exercise discretion.

The judgment of the trial court is affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.