THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERBERT LEROY HOWLAND, a/k/a William Lee Howland, Defendant-Appellant.

First District (1st Division)   No. 77-755

Opinion filed June 26, 1978.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Timothy D. McMahon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Herbert Leroy Howland, a/k/a William Lee Howland (defendant), was charged with three counts of armed robbery in violation of section 18—2 of the Criminal Code of 1961. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2.) After a jury trial, defendant was found guilty of two counts of armed robbery and sentenced to 10 to 30 years in the penitentiary. Defendant appeals, contending that (1) he was deprived of a fair trial by the cumulative prejudicial effect of the prosecutor's misconduct during cross-examination and closing argument and (2) the trial court incorrectly determined that his sentences in this case had to be consecutive to his Indiana sentence.

The record discloses that: Dale Vanderbilt, a security guard at the Robert Hall Village store in Homewood, Illinois, testified that on September 24, 1974, he arrived at the store at 7:45 a.m. with Luke Roberts, the store manager. Vanderbilt locked the door after they had entered and remained at the front door to allow employees to enter. At approximately 8:15 a.m., a man whom Vanderbilt identified at trial as the defendant came to the door. After defendant was admitted to the store, he stated that he was to start work and wanted to speak to Mr. Roberts. Defendant said he knew where the office was and went toward it. The preceding night defendant had asked Vanderbilt where to find the manager and Vanderbilt had directed him where to go.

Luke Roberts testified that on September 24, 1974, shortly after he arrived at the store, Vanderbilt called him and told him that a man in work clothes wanted to see him. Gerald Riske, associate general manager, brought a black man in a blue denim jacket to the office. Roberts identified him as the defendant. Defendant, who had spoken to Roberts

twice previously about employment, discussed his maintenance job with Roberts. A few minutes later defendant pulled a revolver and demanded money. Defendant took Roberts' and Riske's wallets. They walked through the accounting office to the cash room where the safes were unlocked. When Ylo, the office manager, arrived, Roberts called him into the cash room. Roberts put cash from the safe into two large satchels. Roberts carried the satchels to the hallway outside his office. Defendant made Roberts, Riske, Ylo and three employees go into Roberts' office. When defendant asked about communications, Roberts pulled the telephone off the wall. Defendant locked all of the employees in the office.

Eugene Ylo, the store's office manager, testified that he saw Roberts, Riske and another person whom he identified as defendant in the cash room. Roberts requested Ylo to come into the cash room. Defendant had a silver-plated revolver. The safes were open and two cash satchels were on the floor. All four left the cash room and were made to go into Roberts' office along with some office employees. Defendant took $37,000, about $4,000 of it in checks. Defendant was with them for about 20 minutes in a well-lighted area. Ylo did not see defendant put the money into the satchels. Defendant left, carrying the two cash satchels, and locked the door.

Gerald Riske stated that he found defendant in the hallway outside the store's offices and took him to see Mr. Roberts. He corroborated Roberts and Ylo as to the details of the robbery and identified the defendant as the man who had committed the robbery.

Vanderbilt testified that approximately 15 minutes after he had let defendant in, defendant came to the front door carrying two large satchels. Vanderbilt asked defendant where he was going. Defendant responded that he was going to his car and would be back in a minute. When Vanderbilt demanded to inspect the satchels, defendant put down one satchel and reached toward his hip. Vanderbilt quit questioning defendant and defendant walked out of the building. Subsequently Vanderbilt identified a photograph of defendant.

Charles Taylor, a janitor, identified defendant as the man who robbed the store on September 24, 1974. He recalled defendant because defendant had been at the store the previous day asking if the store was hiring. Cynthia Sorensen and Sharon Cassano, employees of the store, also identified defendant as the man who robbed the store.

Eugene Ylo, Luke Roberts, Gerald Riske and Cynthia Sorensen testified that while in Roberts' office defendant threatened them with death if any alarm was given.

Defendant, William Lee Howland, testified in his own behalf that he was in Indianapolis on September 24, 1974, and had not been in Illinois at

any time. He was 25 years old at the time of the trial and was the same height and weight as he was on September 24, 1974. He had pleaded guilty to a felony firearms charge in Indiana because he was guilty and had been sentenced to the penitentiary, but had not completed his sentence because he escaped from prison on June 24, 1974, by walking away while on a work detail outside the prison walls. After his escape, he went to Fort Wayne, Indiana, where he was in an automobile accident on September 5, 1974. He told the police there that he was Herbert Lee Howland because he was an escapee and the car he wrecked was registered to Herbert Lee Howland, defendant's brother. He was released from jail on September 11, 1974. He testified that he was in Indianapolis on September 21, 22, 23 and 24, 1974. On September 25, 1974, he went to Memphis, Tennessee. On October 4, 1974, he was arrested in Indiana by the Indiana authorities for his escape. He had never been in Homewood, Illinois, nor in the Robert Hall Village store there. He had never talked to Luke Roberts or anyone about employment. He had not seen any of that store's employees before they testified against him in this case. He had not held a gun on Riske or Roberts and had not taken their wallets or any money from the store. He had no other felony convictions.

On cross-examination, defendant stated that he was carrying a loaded gun when arrested in the firearms charge to which he pleaded guilty. There was an armed robbery charge dismissed prior to his plea of guilty to the firearms charge. He did not escape as soon as he was assigned to an outside work detail; he walked away two weeks after he was so assigned. The automobile he drove when arrested in Fort Wayne was not stolen. He did lie to the Fort Wayne police about his identity. After he made bond in Fort Wayne, he failed to appear to answer the charge. He has never held a job for more than a year. Although he lived with Gloria Johnson from September 21 through 25, 1974, in Indianapolis, he has no plans to marry her. He tried to tell the people who came to Indiana with an Illinois warrant that he was in Indianapolis on September 24, 1974. Aside from that, the first time he told anyone about being in Indianapolis on September 24, 1974, was in court.

Defendant contends that the cumulative prejudicial effect of the prosecutor's misconduct during cross-examination, combined with the prosecutor's closing argument, denied him a fair trial. The State argues that the claimed errors were waived because not included in defendant's written post-trial motion or were invited by defendant's direct examination or closing argument.

Although many of the contentions made by defendant were waived because of his failure to object at trial or to include them in his post-trial motion and are therefore not properly before this court, we have

considered them and find that they are without merit, either individually or in combination.

Defendant argues that he was prejudiced by the State's cross-examination concerning his prior firearms conviction in Indiana. On direct examination he testified that he had pleaded guilty to a felony firearms charge because he was guilty, but had not completed his sentence because of his escape from prison. On cross-examination he testified that the gun he was carrying which resulted in his guilty plea to the firearms charge was loaded and that an armed robbery charge had been dismissed before he had pleaded guilty.

On direct examination defendant had also testified that after his escape he had been involved in an automobile accident in Fort Wayne, Indiana, while driving his brother's car, had been arrested and had identified himself to the police as his brother in order to avoid being identified as an escapee. On cross-examination he testified that he had lied to the Fort Wayne police and that the car he was driving was not stolen. He also testified that after he made bond in Fort Wayne he failed to appear and that he knew the differences between bonding procedures in Indiana and Illinois. Defendant argues that this cross-examination improperly brought to the jury's attention unrelated criminal conduct and that it and the cross-examination concerning his firearms conviction prejudiced him because it portrayed him as a hardened criminal.

In addition, defendant claims prejudice because of cross-examination concerning his spotty employment record and the fact that from September 21 through September 25, 1974, he was living in Indianapolis with a woman whom he had no plans of marrying.

■■ We find that defendant's claims of prejudice are without merit. His defense was an alibi based solely on his uncorroborated testimony that he was in Indianapolis, Indiana, at the time of the robbery. This made his veracity a subject of proper inquiry by the State.

■■ In anticipation of impeachment by his firearms conviction in Indiana, defendant testified to it and emphasized that he had pleaded guilty because he was guilty, thus implying that, if he had committed the robbery of the Robert Hall Village store, he would plead guilty to it. This tactic made proper the State's cross-examination to show other reasons for the guilty plea, such as the prior dismissing of an armed robbery charge. Also proper, as reflecting on his dishonesty, was the cross-examination showing that he was on his good behavior in prison until the authorities became convinced that he could be trusted and then assigned him to a work detail outside the prison walls, from which he walked away after a short period. Similarly reflecting on his veracity was the cross-examination concerning the use of his brother's name in his Fort Wayne

auto accident and his skipping bail thereafter, even though the car he was driving was his brother's and not a stolen car. All of these matters were events to which he had testified on direct examination and thereby opened the door to legitimate further inquiry. *People v. Nastasio* (1963), 30 Ill. 2d 51, 195 N.E.2d 144, *cert. denied* (1964), 377 U.S. 911, 12 L. Ed. 2d 181, 84 S. Ct. 1173; *People v. Johnson* (1971), 2 Ill. App. 3d 53, 276 N.E.2d 107.

■■ In addition, in order to test the veracity of his alibi, it was proper to question defendant with whom he stayed in Indianapolis on the date of the robbery and the days immediately preceding it. Although it was improper to question him concerning the fact that he had no plans of marrying the woman with whom he was living during that period, and although his spotty employment record could not be said to be relevant to the charges before the court, we conclude that these were minor matters and, under the evidence before the jury, did not contribute to defendant's conviction.

■■ Defendant further contends that the prosecutor in cross-examination made an improper inquiry into his post-arrest silence when he asked whether defendant had told the police of his activities on September 24, 1974. This contention is without merit because there was no post-arrest silence by defendant in that regard. The record discloses that when asked whether his testimony in court that he was in Indianapolis on that date was the first time he had ever told that to anyone, he replied that he "was telling it to the people when they came down to the penitentiary and read the warrant to me" and "I tried to tell them that before we left the penitentiary."

■■ Defendant also argues that the prosecutor improperly argued that his alibi was unsupported because defendant failed to produce any witnesses to substantiate it and also improperly stated his personal belief in the credibility of the State's witnesses. We have carefully examined in their entirety the arguments of both the State and the defense and conclude that the prosecutor was not stating his personal belief in the credibility of the State's witnesses but was asking the jury to exercise its own independent judgment in determining the credibility of the defendant's alibi based solely on his uncorroborated testimony when compared with the clear and convincing identification of defendant by seven witnesses.

■■ ■ Defendant also claims that he was prejudiced because the prosecutor argued facts outside the record. We have examined the record and conclude that there was no prejudicial error in this regard. Luke Roberts, the store manager, had testified that after the robbery he had received several calls from an unidentified person claiming to have information concerning the robbery. Defense counsel in his argument

speculated that the calls may have been made by an individual working for the Federal Government. In answer to this speculation regarding the identity of the caller, the prosecutor suggested that there may have been more than one individual. We fail to see how this was prejudicial and contributed to defendant's conviction. Even if this argument, and the evidence of defendant's spotty employment record and his living with a woman he did not plan to marry were improperly before the jury, they amount to harmless error beyond a reasonable doubt, in view of the positive identification of defendant by seven witnesses. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Gill* (1973), 54 Ill. 2d 357, 297 N.E.2d 135, *cert. denied* (1974), 414 U.S. 1144, 39 L. Ed. 2d 100, 94 S. Ct. 897.

Whether considered individually or in combination, defendant's contentions do not warrant the granting of a new trial.

Finally, defendant contends that the trial court improperly determined that his sentences in this case, while concurrent with each other, were to be consecutive to his Indiana firearms sentence. The Unified Code of Corrections provides in pertinent part in section 5—8—4(a) (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a)):

> "(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court. * * *"

At the hearing in aggravation and mitigation, after reviewing the evidence, including defendant's threat of death, the amount taken in the robbery and the fact that defendant was a fugitive from Indiana, the trial court sentenced defendant to 10 to 30 years in the penitentiary on each of the two armed robbery convictions, with the sentences to run concurrently, and then stated:

> "* * * [H]owever, those sentences may not run concurrently to the sentence imposed by the State of Indiana and they will run consecutive to the sentence imposed in Division 1 of the Criminal Court of Marion County, Indiana, on April 5, 1973, by the Honorable John T. Davis, Criminal No. 73-036A in which the defendant, Willie Lee Howland, was sentenced to a term of ten years in the Indiana Department of Corrections for violation of the 1935 Firearm's Act as charged in Count 2 of that number."

■■ ■ We do not attribute to this statement by the trial court the meaning advanced by defendant—that the court felt it had no alternative but to impose the Illinois sentences to run consecutive to the prior Indiana sentence. Rather, we conclude that the court was exercising the discretion

reposed in him by the statute in making the Illinois sentences concurrent with each other but consecutive to the Indiana conviction. From our examination of the record, we cannot say that the court abused that discretion.

The convictions and sentences are affirmed.

Affirmed.

McGLOON and BUCKLEY, JJ., concur.