THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES B. SEIDER, Defendant-Appellant.

First District (5th Division)    No. 79-1570

Opinion filed June 26, 1981.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendant was found guilty of deviate sexual assault and unlawful restraint (Ill. Rev. Stat. 1975, ch. 38, pars. 11—3 and 10—3) and was sentenced to a term of 10 to 30 years.

On appeal, he contends that: (1) prosecutorial misconduct deprived him of a fair trial; (2) the presentation of a police officer's opinion evidence on ultimate facts denied him a fair trial; (3) he was denied his constitutional right of counsel when he was prevented from consulting with his counsel during a recess; (4) the out-of-court identification and subsequent in-court identification of defendant were illegal products of defendant's arrest in violation of his fourth amendment rights; (5) he was denied his constitutional right of confrontation when the court excluded a police report; and (6) the eyewitness identification was not so strong as to make the alleged errors harmless. We affirm.

On November 11, 1976, at 8:30 p.m., the victim was near the train station at Ashland and Armitage Avenues. She was grabbed by a man who placed a handcuff on her left hand, pushed her into a car and then forced her to commit a deviate sexual act. Following the act she was unhandcuffed and released. After her assailant drove away, the victim stopped a police car. Because she spoke only Spanish and the police officers she stopped did not, the officers walked with her for a half block where they met Officer Rosa who was fluent in Spanish. The victim related the details of the incident to Officer Rosa, describing her assailant as a white male, 30 to 34 years old, 5′7″ tall, 180 pounds, with "Castona" hair. She indicated that her assailant had a knife and that she was handcuffed. She also stated that he drove a yellow four-door car with the partial license plate number 9565. She later identified defendant as her assailant.

Although the police report forms provide a space to indicate the use of weapons, the police report prepared after conferring with the victim did not indicate that a weapon was used, nor did the report make reference to the use of handcuffs.

Five days later on November 16, 1976, Officer Harte observed a two-door car with a yellow body, black roof and a license plate number WM 9065, make an illegal U-turn on North Avenue just east of Ashland Avenue. After the car made the turn, it pulled up to a bus stop on North Avenue. The driver leaned over, as if he were talking out of the passenger door window to a woman who was standing at the bus stop. The woman looked for a second and then turned her back to the car. The officer ultimately curbed the vehicle and approached defendant, the driver. Harte explained to defendant that he had been stopped for a traffic violation and that his car resembled one which had been used in a crime a few days earlier. Upon defendant's agreement to accompany him to the police station, Harte searched defendant's car and recovered a pair of

chrome handcuffs, a knife and a can of dog repellent. Defendant was taken to the police station and later released.

The following evening defendant was arrested and taken to the police station where he was placed in a lineup and identified by the victim. Defendant was 5'11" tall, 210-220 pounds with dark brown hair. He told the police that on the night in question he was at a bar with two friends.

At trial, defendant testified that he was at a bar with friends between 8 and 11:30 p.m. on November 11, 1976, and that he did not have any contact with the victim on that day. The night defendant was arrested, a police officer called one of his friends, Robert Domcyk, who stated that defendant had been at a bar on the night of November 11, 1976. At trial, Domcyk testified that he saw defendant at the bar around 8:30 p.m.

Nicolette Mavronas, another friend, testified on direct examination that she met defendant pursuant to a prior arrangement at 8:05 p.m. on the night of November 11, 1976. However, on cross-examination she indicated that it was close to 8:30 p.m. when defendant arrived.

Thereafter, defendant was found guilty of deviate sexual assault and unlawful restraint and sentenced to a term of 10 to 30 years. Defendant appeals.

OPINION

I

Defendant first contends that the State's cross-examination of defendant was improper, prejudicial and denied him a fair trial in that the State: (a) cross-examined defendant in minute detail as to the facts and circumstances surrounding an 8-year-old prior burglary conviction to which defendant pleaded guilty; (b) inferred defendant improperly invoked constitutional rights and delayed in advising the police of his alibi; (c) inferred defendant was involved in disreputable activity as part of his employment; and (d) presented innuendos that defendant lied concerning his residence. The State maintains that the questions asked during defendant's cross-examination were entirely proper and within the scope of defendant's direct examination.

(a)

Defendant maintains that it is prejudicial and reversible error for the State to cross-examine a defendant concerning the details of a prior conviction. Defendant submits that his brief statement that in 1970 he pleaded guilty to a charge of burglary which involved the breaking into a restaurant and juke box because he needed money could not excuse the State's lengthy cross-examination concerning his plea of guilty. The State responds that the questions posed were entirely proper in that they

addressed matters about which defendant had testified during direct examination.

■■■ While a defendant who testifies in his own behalf may be impeached by proof of a prior conviction, such impeachment is limited to the introduction into evidence of the record of conviction or an authenticated copy thereof. (*People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257; *People v. White* (1980), 84 Ill. App. 3d 1044, 406 N.E.2d 7.) The purpose for excluding evidence of other crimes in criminal cases is that a jury may infer defendant's guilt from such other crimes. (*People v. Belvedere* (1979), 72 Ill. App. 3d 998, 390 N.E.2d 1239; *People v. Coleman* (1972), 9 Ill. App. 3d 402, 292 N.E.2d 483.) This exclusionary rule—that it is improper to cross-examine a defendant as to a prior conviction—does not apply where defendant opens the door to the conviction on direct examination. (*People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382; *People v. Harlan* (1979), 75 Ill. App. 3d 168, 393 N.E.2d 1203; *People v. Snell* (1966), 74 Ill. App. 2d 12, 219 N.E.2d 554; see also *People v. Nastasio* (1963), 30 Ill. 2d 51, 195 N.E.2d 144; *People v. Bey* (1969), 42 Ill. 2d 139, 246 N.E.2d 287.) The rationale behind this exception is that a defendant cannot complain when, on cross-examination, the prosecution pursues a line of inquiry which defendant initiates. (*People v. Clark* (1973), 9 Ill. App. 3d 998, 293 N.E.2d 666; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644; *People v. Saulsbury* (1977), 55 Ill. App. 3d 663, 371 N.E.2d 165.) Accordingly, the State may inquire into otherwise inadmissible and prejudicial evidence when defendant himself testified to such evidence on direct examination. (*People v. Saulsbury; People v. Jackson* (1974), 24 Ill. App. 3d 700, 321 N.E.2d 420.) In any event even where cross-examination of a defendant as to a prior conviction is improper, such error does not mandate a reversal unless it deprived defendant of substantial justice or influenced the determination of his guilt. *People v. Madison* (1974), 56 Ill. 2d 476, 309 N.E.2d 11; *People v. White* (1980), 84 Ill. App. 3d 1044, 406 N.E.2d 7.

At trial, defendant himself first called the jury's attention to his earlier conviction when, during direct examination, he testified that in 1970 he was charged with burglary and that he pleaded guilty to the offense because he did it. He further testified that he broke into the restaurant and juke box because he needed some money. He stated that there was a trial and that he received a sentence of five years' probation.

On cross-examination the State made further inquiry into the facts surrounding the burglary. The State inquired into the nature of the offense, the location of the restaurant and juke box, the method used to break into each, and the circumstances surrounding defendant's arrest.

■■ While defendant only objected to five of the 28 questions (one of which was sustained) posed by the State concerning his prior conviction,

he now asserts that the entire line of questioning was clearly immaterial and irrelevant to the issue of defendant's credibility. An examination of the record indicates that the issue was sufficiently preserved and that a more strenuous objection would have been equally unavailing. Accordingly, we will address the merits of defendant's contention.

Initially, it should be noted that defendant not only testified as to the fact of his prior conviction but also to the details and circumstances surrounding that conviction. Defense counsel's inquiries and defendant's answers were plainly intended to infer that defendant had pleaded guilty when he was guilty, and since he told the truth and admitted his guilt at a previous time, he was more likely to be telling the truth in the instant case. (Compare *People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263.) As such, further inquiry by the State into defendant's prior conviction in order to dispel the impression created by defendant that his plea of guilty was motivated by his desire to tell the truth irrespective of the consequences was proper and well within the scope of the direct examination. There is no indication that the State was taking unfair advantage of tactical errors made by defense counsel. The questions posed by the State were designed, in part, to show that defendant had been arrested by uniformed Chicago police officers inside the restaurant between one and two in the morning and that defendant had pleaded guilty because there was absolutely no question as to his guilt. While the question relating to the location of the restaurant may not have been necessary, considering that defendant, for tactical reasons, previously initiated this line of inquiry, it can hardly be said that this additional information could have influenced the determination of his guilt.

Furthermore, the record shows that the court, in order to protect defendant against possible prejudice, suggested and gave the following instruction:

> "Evidence of the defendant's previous conviction of a crime is to be considered by you insofar as it may affect his credibility as a witness, and must not be considered by you as evidence of his guilt of the crime with which he is charged." (See Illinois Pattern Jury Instructions, Criminal, No. 3.13 (2d ed. 1977).)

While this instruction may not have cured error had the defendant not initiated the inquiry into his prior conviction, it certainly minimized the possibility that the jury would infer defendant's guilt due to his previous conviction.

■■ Under these circumstances the cross-examination was not improper because it was invited by defendant in direct examination. See *People v. Saulsbury* (1977), 55 Ill. App. 3d 663, 371 N.E.2d 165; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644; *People v. Snell* (1966), 74 Ill. App. 2d 12, 219 N.E.2d 554.

## (b)

Defendant next argues that it was improper for the prosecutor to interrogate him concerning whether he had been given *Miranda* type warnings including the right to remain silent. The State responds that the questions posed were entirely proper where defendant testified on direct about the warnings he received and where there was absolutely no suggestion by the prosecutor that defendant remained silent after receiving the warnings.

■■■ It is an established principle that the use of an accused's silence at the time of his arrest and after he has received his *Miranda* warnings for impeachment purposes violates the self-incrimination clause of the fifth amendment and the due process clause of the fourteenth amendment of the United States Constitution. (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133; *People v. Hairston* (1980), 86 Ill. App. 3d 295, 408 N.E.2d 382.) Such inquiry is prohibited because after being apprised of one's *Miranda* rights, a defendant's failure to offer an explanation during custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to suggest an inference that the explanatory testimony was a later fabrication. (*In re S.L.C.* (1979), 75 Ill. App. 3d 473, 394 N.E.2d 687.) Nevertheless, a *Doyle* violation does not automatically require reversal. (*People v. Johnson* (1979), 74 Ill. App. 3d 1037, 393 N.E.2d 40; *People v. Rush* (1978), 65 Ill. App. 3d 596, 382 N.E.2d 630.) Where such inquiry does not contribute significantly to defendant's conviction, it has been held to be harmless beyond a reasonable doubt. (*People v. Johnson; People v. Rush.*) It is also well settled that a defendant cannot complain where the prosecutor pursues a line of inquiry which the defendant initiates or invites. (*People v. Saulsbury* (1977), 55 Ill. App. 3d 663, 371 N.E.2d 165; see also *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617, *appeal dismissed* (1972), 409 U.S. 811, 34 L. Ed. 2d 66, 93 S. Ct. 100; *People v. Quinlan* (1980), 85 Ill. App. 3d 1079, 407 N.E.2d 935.) Accordingly, the State may inquire into otherwise inadmissible and prejudicial evidence when defendant testifies to such evidence on direct. *People v. Saulsbury; People v. Jackson* (1974), 24 Ill. App. 3d 700, 321 N.E.2d 420.

On direct examination defendant testified that after being arrested on November 17, 1976, he was placed in a lineup and identified by the victim as her assailant. He further testified that after being so identified, a State's Attorney informed him that he was being arrested and inquired, "You know your rights and everything." Defendant responded, "What can I say, I didn't do anything, what is going on?" Defendant was then told he was being charged with deviate sexual attack, kidnapping and unlawful restraint. Defendant again responded, "Oh, my God. When, when did

this—I wasn't—I don't know anything about this." After being informed that the offense occurred on November 11, 1976, defendant stated, "I wasn't even—I don't know what you're talking about. I was in a bar with Bob Domcyk and a young lady." Upon request, defendant gave Domcyk's phone number to an investigator. Defendant further testified that after being released on bond the following afternoon, he called his attorney Victor Ciardelli, Bob Domcyk and Nicolette Mavronas.

On cross-examination the State merely elicited the fact that defendant was fully advised of his constitutional rights, including the right to remain silent and that he acknowledged those rights. These questions did not constitute a comment on defendant's silence in violation of *Doyle* because there was no post-arrest silence on the part of defendant. (*People v. Howland* (1978), 62 Ill. App. 3d 352, 378 N.E.2d 1141.) Nor were these questions used for impeachment purposes.

The State never inferred or suggested that defendant remained silent after receiving his *Miranda* warnings. Nor did the State challenge defendant's testimony on direct concerning his post-arrest statements. The two brief questions, now challenged by defendant, were initiated and invited by defendant's testimony on direct. Once defendant testified that a State's Attorney had asked him whether he knew his "rights and everything," it was proper for the State to inquire whether defendant had been fully advised of his constitutional rights, including the right to remain silent. Compare *People v. Saulsbury*; *People v. Jackson*.

Similarly, the prosecutor's cross-examination whether defendant had made a phone call after being identified as the victim's assailant was well within the scope of direct examination. On direct, defendant testified in great detail about his actions, conversations and observations before, during and after the lineup. He further testified that following his release on bond he called his attorney Victor Ciardelli, Bob Domcyk and Nicolette Mavronas. By enumerating the individuals he called, he raised the inference that he called no one else. On cross-examination the prosecutor merely explored the same line of inquiry in asking defendant whether he was permitted to make a phone call after the lineup. He initially responded in the negative but later admitted that right after the lineup he did have a phone conversation with an individual named Edward Doyle. However, Doyle's identity was never revealed to the jury. While defendant argues it was improper and prejudicial for the State to present evidence that he invoked his right to seek assistance of counsel, it was defendant's own testimony on direct that established that he contacted his attorney immediately after being released on bond. While the State did establish that defendant also called Doyle on the previous night, it in no way intimated that Doyle was defendant's attorney.

■■ Accordingly, we conclude that the prosecutor's questions were

proper because they were confined within the limits of the direct examination.

### (c)

Defendant next argues that since the prosecution had improperly presented the innuendo of an admission by silence, it was error to prevent defendant from demonstrating that he denied guilt and advised the police of his alibi. Defendant submits that he was precluded from corroborating his testimony—that he advised the police of his alibi at the time of his arrest—with the testimony of Bob Domcyk that Domcyk received a phone call from an individual who identified himself as a police officer requesting a verification of defendant's alibi.

Initially, defendant's argument is based on the mistaken premise that the prosecutor presented the innuendo of an admission by silence. As previously noted, the State never challenged the fact that defendant had given the police an alibi on the night of his arrest. Nor did it ever intimate that defendant remained silent after being advised as to his constitutional rights.

On cross-examination the prosecution asked Domcyk how he knew November 11, 1976, fell on a Thursday. The witness responded that he received a call approximately a week after the incident and that the caller mentioned that he was a police officer and wanted to ask some questions about defendant. He further testified that this individual asked if he had been in a bar on November 11 and whether defendant was also present. The witness stated "The police officer, whoever it was that called, mentioned that they had [defendant] on kidnapping charges and I laughed. I thought it was a joke."

On redirect, defense counsel asked Domcyk when was the first time anyone requested him to recollect what he did on November 11, 1976. Domcyk responded that it was someone from the Chicago Police Department about a week after November 11, which was the conversation he had just testified to on cross-examination.

Defense counsel then inquired whether the witness had told the police department that defendant was with him at the Good Luck Lounge on the night of November 11. The State objected that no foundation had been laid to identify the person who had called. The court sustained the objection stating that the witness had no way of knowing that the caller was a police officer even if he so stated. Defense counsel was then permitted to ask the witness if "somebody made a call to him and if they discussed November 11th." The witness again testified that approximately a week after November 11, he received a phone call and that the caller questioned him about his activities that night. He told the caller that he was at the Good Luck Lounge with defendant on that night.

■■ Accordingly, defendant's contention that he was unable to present the testimony of Domcyk as to the claimed alibi is without merit.

(d)

Defendant next argues that the prosecutor presented improper innuendos when cross-examining him as to the nature of his employment and his place of residence. Defendant submits that it was improper for the prosecutor to ask him whether he ever seized an individual's property at 2 a.m., since its effect was to inflame the jury, causing them to dislike and hence disbelieve defendant.

On direct examination defendant, in his attempt to explain his possession of the handcuffs, testified that he worked for an automobile financing company. He explained that often customers would return their cars upon loss of employment or inability to maintain payments. He handled most of the voluntary automobile repossessions and over a period of time accumulated various items left in the automobiles. He kept or threw away such items as were unclaimed after six months or a year. Coincidentally, he had the handcuffs in his desk which he later put in his car.

On cross-examination the prosecutor inquired further into defendant's occupation. Such inquiry was permissible because it was invited and well within the scope of direct examination. (*People v. Clark* (1973), 9 Ill. App. 3d 998, 293 N.E.2d 666; see also *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617.) In response to a question, defendant stated that in the course of his employment he had personally recovered property. When questioned whether there were instances in which the recovery of personal property occurred, "for example, after hours and by that I mean possibly 2:00 in the morning?" defendant, over objection, responded "no." The prosecutor then questioned him whether he had ever recovered an individual's personal property. Defendant answered "no" and explained that there were auto recovery professionals who performed this task. Defendant further testified that he was employed as a skip tracer, which only involved locating individuals who had fallen behind on their debts.

First, it should be noted that the prosecutor never specifically asked defendant whether he had personally gone out and recovered property at 2 a.m. Secondly, defendant's responses, as developed by the evidence, plainly showed that defendant was not involved in the recovery of property and that his job merely entailed locating delinquent creditors. Accordingly, defendant has failed to demonstrate how he was prejudiced by this line of questioning.

■■ Defendant also argues that the prosecutor raised the innuendo that

defendant was lying about his residence and specified the following question and answer in support of this contention:

"Q. Isn't it a fact that you reside at 4758 West Belle Plaine and do not live with your mother?

A. Incorrect."

The above question was asked during the cross-examination of Bob Domcyk who went on to explain that his electrical contracting business was located at that address and not his residence. This question was not posed to defendant as he now suggests. Accordingly, this contention is without merit.

## II

Defendant next contends he was denied a fair trial when the prosecutor improperly presented opinion evidence on ultimate facts to be decided by the jury, namely the opinions of Officer Houston and Officer Harte that defendant was the assailant.

As a general rule, testimony as to the witness' opinion is not admissible into evidence. The testimony of the witness must be confined to statements of fact of which the witness has personal knowledge. *People v. Linkogle* (1977), 54 Ill. App. 3d 830, 368 N.E.2d 1075.

During cross-examination defense counsel questioned Officer Houston about his police report and whether he recorded the assailant's description and the circumstances of the incident as related by the victim. The officer stated that he had inserted the word "unknown" in the portion of the report concerning the assailant's vehicle. On redirect, the prosecutor asked the witness what caused him to put "unknown" on the report. An objection to the question was overruled and the officer replied:

"Based on the fact that, again, the lady, very upset, we did not get as much detail out of her as I would like to have at this time. That's surprising she gave as good a description as she did."

A defense objection was sustained and the last sentence of the officer's answer was stricken.

Defendant argues that the statement, "That's surprising she gave as good a description as she did," was an expression of the officer's opinion that defendant was the victim's assailant. Initially, this statement was immediately stricken from the record and such prompt action normally relieves any substantive prejudicial effect. (*People v. Johnson* (1973), 11 Ill. App. 3d 745, 297 N.E.2d 683.) Furthermore, the record indicates that the officer was referring to the victim's description of the car. Houston was explaining that the reason his report contained numerous "unknowns" was because the victim's emotional and physical condition prevented her from relating certain details. His statement regarding his "surprise"

plainly related to her ability to impart any information at all. Accordingly, this single inadvertent remark on the part of Officer Houston can hardly be concluded as expressing an opinion as to defendant. Compare *People v. Cherry* (1971), 130 Ill. App. 2d 965, 267 N.E.2d 744.

Defendant next argues that Officer Harte was improperly allowed to testify as to his opinion that defendant's car resembled that of the assailant. A review of the record demonstrates that this contention is unfounded.

At trial, the prosecutor asked Officer Harte what he said to defendant when he stopped him on the evening of November 16, 1976. Officer Harte responded:

"I asked the defendant for his driver's license, and he produced it and asked why we had stopped him.

I believe I explained to him the traffic violation that he had committed at the intersection of North and Ashland. And after a moment, I told him that the car resembled one used in a crime a few days previous to this date. And I asked him if he would accompany us into the 14th District for an investigation of that incident."

■■ This testimony was admissible as part of the sequence of events concerning defendant's initial stop and subsequent arrest. (*People v. Hagen* (1978), 63 Ill. App. 3d 944, 380 N.E.2d 954.) Officer Harte in no way intimated that in his opinion defendant was the assailant. Defendant's contention is without merit.

### III

Defendant next contends that he was denied his right to counsel when, during a recess, he was prevented from consulting with his attorney. Relying on *Geders v. United States* (1976), 425 U.S. 80, 47 L. Ed. 2d 592, 96 S. Ct. 1330, and *People v. Noble* (1969), 42 Ill. 2d 425, 248 N.E.2d 96, he argues that placing such limits on his right to consult with counsel is reversible error.

■■ Following direct examination of defendant, the court stated:

"We will have a short recess and then you may proceed with cross examination.

You are now on the stand, Mr. Seider. You may not discuss your testimony with anyone."

The record indicates that defendant has waived this issue. First, there was no objection raised to the court's admonishment. Secondly, defendant never raised this issue in his post-trial motion. It has been repeatedly held that issues not raised at trial or in post-trial motions are waived. (*People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182; *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) This rule applies to both constitutional and

nonconstitutional issues. *People v. Lykins; People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

Unlike *Geders v. United States* and *People v. Noble,* wherein the defendant was prevented, over defense counsel objection, from consulting with his attorney during an overnight recess, defense counsel in the instant case never requested or indicated a need to confer with defendant. Nor did defendant request to consult with counsel. Additionally, the recess was not overnight but rather a "short" break between direct and cross-examination.

While research reveals no Illinois decision, the identical situation was considered in *United States v. Leighton* (2d Cir. 1967), 386 F.2d 822. In that case the defendant was precluded from communicating with his attorney during an hour and 15 minute lunch recess taken between defendant's direct and cross-examination. That court, while noting that defense counsel had objected to the trial court's ruling, concluded that the objection appeared to be an attempt to show reversible error in the record rather than an effort to show he had something to discuss with defendant. Consequently, it held that no reversible error occurred because no harm to defendant's right to effective assistance of counsel occurred. *Cf. People v. Lewis* (1977), 53 Ill. App. 3d 89, 368 N.E.2d 619.

■■ Notwithstanding the waiver, the court's ruling did not deny defendant effective assistance of counsel.

## IV

Defendant next contends that the "seizure" of his person, without an arrest warrant, at his place of employment on November 17, 1976, for the very purpose of a lineup was a violation of his fourth amendment rights. Defendant submits that there were no exigent circumstances nor probable cause and that therefore the trial court erred in denying his motion to suppress the resulting identification.

■■ In his pretrial motion, defendant asserted that the lineup identification should be suppressed because: (1) his request for counsel upon being arrested was refused; (2) his identification resulted from a prior singling out and police suggestion; and (3) other persons in the lineup were not similarly dressed nor of similar age, height and weight. Defendant did not allege at trial that either the out-of-court or in-court identification should be suppressed because they were illegal products of a warrantless arrest. Nor was this issue included in his post-trial motion. The failure to raise an issue at trial or in post-trial motions constitutes a waiver of that issue on appeal. (*People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182; *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) This rule applies to both constitutional and nonconstitutional issues. (*People v. Lykins; People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Furthermore, where the

grounds for a new trial are stated in writing, the accused is limited on review to the errors alleged therein and all others are deemed waived. *People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944; *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840.

■■ Additionally, defendant has failed to include the transcripts of the hearings during which he challenged the lineup identification and whether probable cause existed for his arrest. Without the report of proceedings, the record is insufficient to demonstrate the alleged error. Accordingly, defendant has failed to properly preserve this issue for appeal. *People v. Edwards*; compare *People v. Grice* (1978), 58 Ill. App. 3d 264, 374 N.E.2d 239.

Furthermore, an arrest warrant is generally unnecessary where a police officer has probable cause to justify an arrest. (*E.g., People v. Green* (1980), 88 Ill. App. 3d 929, 410 N.E.2d 1003; *People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505; *People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056; *People v. Tedder* (1980), 83 Ill. App. 3d 874, 404 N.E.2d 437.) Defendant relies extensively on two recent decisions— *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, and *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543—to establish the necessity of obtaining a warrant. However, these cases are distinguishable. Those decisions held that in the absence of exigent circumstances, notwithstanding probable and statutory authority, the fourth amendment prohibits the police from making a warrantless, nonconsensual entry into a suspect's home in order to make a routine felony arrest. See *People v. Hart* (1980), 88 Ill. App. 3d 484, 410 N.E.2d 633; *People v. Montgomery* (1980), 84 Ill. App. 3d 695, 405 N.E.2d 1275.

■■ In the instant case the arrest occurred at defendant's place of employment and not in his home. While an employee may have a legitimate expectation of privacy at his place of employment and, therefore, the standing to challenge the legality of the police entry (*People v. Davis* (1980), 86 Ill. App. 3d 557, 407 N.E.2d 1109), defendant has not contended nor has he shown a legitimate expectation of privacy at his particular place of employment. He therefore has failed to meet the threshold requirement of standing to challenge the legality of his seizure. *People v. Thomas* (1980), 89 Ill. App. 3d 592, 411 N.E.2d 1076.

Defendant also argues that his seizure was unconstitutional because it lacked probable cause. He submits that when he was seized at his place of employment and when he was initially seized on the street, the police officers were merely aware of similarities between defendant and the assailant which, when considered in context with the contradicting dissimilarities, did not rise to probable cause. However, the issue of probable cause has been decided against defendant in his prior appeal. (*People v. Seider* (1978), 66 Ill. App. 3d 1113.) Defendant is therefore

precluded from relitigating this issue. *People v. Smith* (1979), 72 Ill. App. 3d 956, 390 N.E.2d 1356.

Therefore, the trial court did not err in refusing to suppress the identification resulting from defendant's arrest.

V

Defendant next contends that he was denied his constitutional right of confrontation when the court denied admission into evidence of the police report which was necessary to effectively impeach by omission the testimony of the victim and police officers.

■■ Generally, police reports are not admissible into evidence. (*People v. Walls* (1980), 87 Ill. App. 3d 256, 408 N.E.2d 1056; *People v. Morris* (1978), 65 Ill. App. 3d 155, 382 N.E.2d 383; *People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104; Ill. Rev. Stat. 1977, ch. 38, par. 115—5(c)(2); Ill. Rev. Stat. 1977, ch. 110A, par. 236(b).) Although police reports may not be used to divulge substantive evidence, they may be used for the limited purpose of impeachment or refreshing a witness' recollection. *People v. Morris.*

■■ In the instant case the victim testified that her assailant used a knife and handcuffs. Her statement as recorded by Officer Houston, and approved by Officer Rosa, on the night of the occurrence fails to mention that any weapon was used or displayed. At trial, however, Officer Rosa testified that the victim did tell him that the offender used handcuffs. Thereafter, the court permitted defense counsel to use the police report for the purpose of impeachment. Defense counsel explored the report in great detail and fully demonstrated those statements made by the victim which were contained in the report and those which were not. Defense counsel effectively elicited testimony that the police report was a printed form which contained numerous "boxes" wherein certain information was requested and that the boxes marked for "weapons used or displayed" and "knife or cutting instrument" were not filled in. The police report was fully explored by defendant to demonstrate impeachment by omission. However, when defendant sought to introduce the police report as substantive evidence, the trial court properly ruled it inadmissible. *People v. Morris.*

VI

Finally, defendant contends that the evidence—solely that of eyewitness identification—is not so strong as to permit the errors alleged in points I through V to be considered harmless. Inasmuch as defendant has failed to establish the alleged errors in this appeal, only a short comment on the sufficiency of the evidence is necessary.

It is for the trier of fact to determine the credibility of witnesses, the

weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) Discrepancies or conflicts in the testimony generally affect only the weight to be given the testimony and the trier of fact is free to accept or reject a witness' testimony. (*People v. Beasley* (1977), 54 Ill. App. 3d 109, 369 N.E.2d 260.) It is well established that the identification by a single witness, who had ample opportunity for observation, is sufficient to sustain a conviction. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) It is not necessary that the trier of fact believe a defendant's alibi rather than the positive identification of the victim, even though the alibi testimony was given by a greater number of witnesses. *People v. Marshall* (1973), 9 Ill. App. 3d 1035, 293 N.E.2d 646.

In the instant case the victim was accosted by an individual who handcuffed her and forced her into his car. Her assailant then drove to an alley where he forced her, at knife point, to perform a deviate sexual act. During the incident the victim had ample opportunity to view her assailant. Following the act the victim was released whereupon she was able to view the license plate number on her assailant's car. She immediately stopped a police car and proceeded to report the incident. She was able to describe her assailant and his car in detail. Any discrepancies in her description must be considered in the light of the victim's excited state, the fact that she spoke only Spanish, and that she thereafter identified defendant as her assailant. We have carefully reviewed the record and find the evidence sufficient to sustain the verdict of the jury beyond a reasonable doubt.

## VII

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.